[No. 51793-2.   En Banc.   February 13, 1986.]

*In the Matter of the Personal Restraint of*
OBERT MYERS, *Petitioner.*

*Elizabeth Penoyar,* for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *Douglas D. Walsh, Assistant,* for respondent.

*Patricia J. Arthur* on behalf of Evergreen Legal Services, amicus curiae for petitioner.

PEARSON, J.—In October 1983, petitioner Obert Myers assisted one Joseph Gertz in the armed robbery of the Bank of Pacific's Naselle–Grays River Valley branch. Although Gertz was armed, Myers did not carry a weapon. Gertz forced the four tellers into the bathroom at gunpoint, but none of the tellers was physically injured.

One month later, authorities apprehended and questioned Myers. He was very cooperative, confessing to his own participation and implicating Gertz. According to Myers, Gertz tricked him into coming to Oregon, and then exerted some degree of coercion which prevented Myers from terminating his association with Gertz once the real reason for the association (robbery) became apparent.

Myers pleaded guilty to second degree robbery in Pacific County Superior Court and received the statutory maximum sentence of 10 years in a state correctional facility. The officer who completed the presentence investigation report considered placing Myers on probation, but instead

recommended a term of 15 to 21 months, a sentence which he believed was consistent with the presumptive sentence range under the Sentencing Reform Act of 1981 (SRA), codified at RCW 9.94A.[1]

The prosecuting attorney recommended that Myers serve the "acceptable minimum sentence" for second degree robbery. According to the prosecutor,

[i]t is important to note that O'bert Myers has no other criminal history or involvement . . . and . . . freely talked to the officers about his and Mr. Gertz's involvement . . .

Myers appears genuinely recalcitrant [sic] . . . He wrote a letter of apology to the tellers of the bank and made himself available as a witness in the prosecution of Mr. Gertz. It is this prosecutor's opinion that he does not pose a substantial danger to the public and should be paroled after serving the acceptable minimum sentence . . .

Nevertheless, the trial court recommended that Myers serve a term of 5 years.

At Myers' admissions meeting with a panel of the Board of Prison Terms and Paroles, the Board imposed a sentence of 48 months, with a progress meeting scheduled for February 1986. The Board set Myers' sentence after considering the presumptive sentence range of 3 to 9 months under the SRA. The Board, however, failed to articulate reasons supporting the length of the sentence, which was over five times greater than the maximum presumptive sentence under the SRA.

Myers filed this personal restraint petition in the Court of Appeals, challenging the Board's imposition of a 4-year sentence. The Court of Appeals certified the petition to this court. The Board paroled Myers prior to oral argument, in part due to the trial court's reduction of Myers' prior minimum term recommendation to 3 to 9 months, in compliance with the SRA.

---

[1]This recommendation was erroneous, as the officer considered Gertz' possession of a firearm. By definition, second degree robbery, the crime to which Myers pleaded guilty, does not involve the use of a firearm. RCW 9A.56.210.

## I

■ As pointed out by the Board, Myers' parole arguably renders his personal restraint petition moot. As a general rule, this court will dismiss an appeal if it presents moot issues. *Sorenson v. Bellingham,* 80 Wn.2d 547, 558, 496 P.2d 512 (1972). In *Sorenson,* however, the court recognized an exception to this rule "when it can be said that matters of continuing and substantial public interest are involved." *Sorenson,* at 558. The court must consider three criteria in determining whether the requisite degree of public interest exists: (1) the public or private nature of the question presented, (2) the need for a judicial determination for future guidance of public officers, and (3) the likelihood of future recurrences of the issue. *Sorenson,* at 558.

The petition before the court is the first of many petitions raising similar issues. Most of these petitions have been stayed pending resolution of this petition. Accordingly, the decision will have a broad impact within the corrections system, providing needed guidance to public officers who await this decision. In similar circumstances this court rendered a decision despite mootness. *See In re Cross,* 99 Wn.2d 373, 377, 662 P.2d 828 (1983); *Dunner v. McLaughlin,* 100 Wn.2d 832, 838, 676 P.2d 444 (1984); *Bresolin v. Morris,* 88 Wn.2d 167, 169, 558 P.2d 1350 (1977). We hold that Myers' petition is reviewable despite its mootness because it presents questions of continuing and substantial public interest.

## II

Myers argues that the Board abused its discretion by imposing a sentence not reasonably consistent with the presumptive sentence range for second degree robbery under the SRA. The SRA became effective on July 1, 1984. The Court of Appeals has construed the SRA as only applying prospectively. *In re Blair,* 38 Wn. App. 670, 688 P.2d 532 (1984); *In re Townsend,* 38 Wn. App. 727, 688 P.2d 547 (1984); *see also* D. Boerner, *Sentencing in Washington* § 6.22 (1985).

Nevertheless, RCW 9.95.009(2) provides:

Prior to its expiration and after July 1, 1984, the board shall continue its functions with respect to persons incarcerated for crimes committed prior to July 1, 1984. The board *shall consider* the standard ranges and standards adopted pursuant to RCW 9.94A.040, and *shall attempt to make decisions reasonably consistent* with those ranges and standards.

(Italics ours.) Thus, defendants who received minimum terms after July 1, 1984, for crimes committed prior to that date are subject to the SRA to the extent provided above, even though the SRA sentencing provisions are binding only in cases where the defendant committed the crime after June 30, 1984. RCW 9.94A.905.

■ A review of the limited legislative history of the SRA, Second Substitute House Bill 440, 47th Legislature (1981), reveals some dispute as to whether the SRA limited or expanded the trial judge's sentencing discretion. Clearly, however, RCW 9.95.009(2) did limit the Board's sentencing discretion, as "[t]he use of the word 'shall' creates an imperative obligation unless a different legislative intent can be discerned." *State v. Q.D.*, 102 Wn.2d 19, 29, 685 P.2d 557 (1984).

Before enactment of the SRA, the Legislature adhered to the policy that actual time of imprisonment was best determined by the Board. *State v. Bishop,* 94 Wn.2d 116, 118, 614 P.2d 655 (1980). The SRA represents a significant departure from that policy. The Board gradually is being phased out and will expire on July 1, 1988. Furthermore, even while the Board retains full membership, sentencing decisions now are within the sole province of trial judges, RCW 9.94A.120, except in the limited number of cases like the one before the court. In this group of cases, the Board must consider and attempt to impose sentences reasonably consistent with the ranges and standards under the SRA. RCW 9.95.009(2).

■■ Despite the clear limitation imposed on the Board's discretion by RCW 9.95.009(2), the Board promul-

gated a Parole Board rule which provides:

Effective July 1, 1984, the Board shall fix minimum terms based upon its *full discretion.* The Board shall consider the standard ranges and standards adopted pursuant to RCW 9.94A.040 as currently constituted or amended and will attempt to establish minimum terms reasonably consistent with the standard ranges and the standards adopted therein *while adhering to its purpose* to reintegrate the offender back into society and preventing further anti–social acts under Chapter 9.95 RCW.

(Italics ours.) Parole Board Rule 2.081. If we give the Legislature's use of the word "shall" in RCW 9.95.009(2) its proper effect, *see State v. Q.D., supra,* the Board's rule clearly conflicts with the Legislature's intent.

Even if this court could derive a different interpretation from the seemingly mandatory language of RCW 9.95-.009(2), this court "should adopt that one which best advances the overall legislative purpose." *State v. Bishop, supra* at 118 (citing *Anderson v. Morris,* 87 Wn.2d 706, 716, 558 P.2d 155 (1976)). In the SRA's preambulatory language, it states, *inter alia,* that the SRA is designed to (1) ensure that punishment is *proportionate* to the offense and the offender's criminal history, (2) promote respect for the law by providing *just* punishment, and (3) be *commensurate* with the punishment imposed on others committing similar offenses. RCW 9.94A.010.

Reading this preambulatory language in context with the language of RCW 9.95.009(2) reveals the Legislature's clear message: The Board must consider and impose sentences "reasonably consistent" with the ranges and standards under the SRA. Although this court must decide what is "reasonably consistent", the Board clearly does not have the "full discretion" in sentencing which it claims under Parole Board Rule 2.081.

An administrative agency, like the Board, only has those powers granted it by the Legislature. *In re Little,* 95 Wn.2d 545, 549, 627 P.2d 543 (1981). Under the facts of this case, the SRA empowers the Board to impose sentences "reason-

ably consistent" with the SRA. The Board may not amend or alter the statutes under which it functions by its own interpretation of those statutes. *In re George,* 90 Wn.2d 90, 97, 579 P.2d 354 (1978). Parole Board Rule 2.081 represents the Board's attempt to amend the mandatory nature of RCW 9.95.009(2). This it cannot do. *Baker v. Morris,* 84 Wn.2d 804, 809, 529 P.2d 1091 (1974).

This court presumes the validity of administrative rules adopted pursuant to a legislative grant of authority, and will uphold such rules on review if they are reasonably consistent with the statute being implemented. *Fahn v. Cowlitz Cy.,* 93 Wn.2d 368, 374, 610 P.2d 857, 621 P.2d 1293 (1980). Parole Board Rule 2.081 conflicts with the Legislature's express intent under RCW 9.95.009(2), a provision enacted to effect an equitable transition from an indeterminate to a determinate sentencing scheme. Accordingly, we hold that Parole Board Rule 2.081 is invalid. *See* RCW 9.95.150; *Baker v. Morris, supra.*

Nevertheless, the court must address the issue of whether the Board abused its discretion in imposing a sentence of 48 months, contrary to the 3– to 9–month presumptive sentence mandated by the SRA. Washington has long permitted appellate review of claims of abuse of discretion in sentencing, *State v. Douglass,* 66 Wash. 71, 72, 118 P. 915 (1911); but in only one reported decision has a sentencing decision by a trial court been found to constitute an abuse of discretion. *See State v. Potts,* 1 Wn. App. 614, 464 P.2d 742 (1969).

Likewise, this court generally will not interfere with a Board determination unless the Board abuses its discretion in setting a prisoner's discretionary minimum term. *See Pierce v. Department of Social & Health Servs.,* 97 Wn.2d 552, 561, 646 P.2d 1382 (1982). *See generally State v. Potts, supra; State v. Hurst,* 5 Wn. App. 146, 148, 486 P.2d 1136 (1971); *State v. Derefield,* 5 Wn. App. 798, 799–800, 491 P.2d 694 (1971); *State v. Birdwell,* 6 Wn. App. 284, 299, 492 P.2d 249, *cert. denied,* 409 U.S. 973 (1972). The issue is whether the Board abused its discretion in setting a mini-

mum term five times greater than that mandated by the SRA, without providing adequate reasons for the significant departure.

In *State v. Hurst, supra* at 148, the Court of Appeals stated that it has "stressed the necessity for the record to reveal a basis for the exercise of the discretionary determination and [has] indicated where this basis is present, [it] will hold that discretion is abused only where it can be said no reasonable man would take the view adopted . . ."

The statement made in *Hurst* comports with this court's decision in *In re Sinka,* 92 Wn.2d 555, 599 P.2d 1275 (1979) which held that due process required the Board to permit access by prisoners to certain file information to avoid sentences based on erroneous information. *In re Sinka,* at 568. This court decided *In re Sinka* prior to the enactment of the SRA, but the court's analysis applies to the present petition. In *In re Sinka* the court stated:

[W]e believe that prisoners may justifiably rely on the Parole Board's following of its guidelines when setting minimum terms. Although the constitution does not guarantee the availability of the guidelines, the Board itself created them and the expectation that they will be followed. Moreover, the Board recognizes that, when this expectation is disappointed by the setting of a term outside the guidelines, *written reasons must be provided.*

(Citations omitted. Italics ours.) *In re Sinka,* at 564.

The court in *In re Sinka* faced the issue of whether Board guidelines had created a liberty interest for due process purposes. Accordingly, the decision does not directly support Myers' claim that the Board abused its discretion in setting his sentence. The case is instructive, however, on the need for written reasons whenever a sentence exceeds statutory or agency guidelines. The policy of requiring such reasons reflects a desire "'to minimize the possibility that the merely personal preferences . . . will decide the outcome . . .'" *Harris v. Kastama,* 98 Wn.2d 765, 768, 657 P.2d 1388, *cert. denied,* 464 U.S. 844 (1983) (quoting *State*

*v. Fain,* 94 Wn.2d 387, 397, 617 P.2d 720 (1980)).

In Myers' case, the Board clearly considered the SRA when imposing his sentence. The Board also provided a statement of reasons for imposition of the 48–month sentence. However, the only reasons possibly justifying the severity of the sentence were that (1) "[t]his was a robbery", (2) "[t]he offense was the bank", (3) "$20,000 was taken", and (4) "[b]oth of the parties went out of state".

The Minnesota Supreme Court, construing its own sentencing act (from which Washington's was patterned), has held that where a factor was already taken into account by the Legislature in determining the elements of the mandatory minimum sentence, it cannot also be used as a basis for a durational departure. *State v. Brusven,* 327 N.W.2d 591, 593 (Minn. 1982). We now adopt the rule enunciated by the Minnesota court. Therefore, the above quoted reasons given by the Board do not justify such a significant departure from the SRA presumptive sentence range.

Ignoring those Board reasons which the Legislature already has factored into the sentencing matrix, other reasons listed by the Board are at most neutral. For example, the Board stated that Myers (1) "had turned himself in", (2) gave the Board "a letter from an employer . . . which indicates that he would be employed again by this employer", (3) "is also married and . . . wants to return back to his wife", (4) "has been raised in a foster home", and (5) "apparently his mother is not in the best of physical condition in a rest home."

In short, the Board failed to give adequate reasons for its departure from the presumptive sentence of 3 to 9 months under the SRA. Accordingly, we hold that imposition of a 48–month sentence in the absence of adequate reasons constituted an abuse of discretion.

### III

Myers argues that the language of RCW 9.95.009(2) is void for vagueness. In support of this argument, Myers points to the language of RCW 9.95.009(2), which requires

the Board to "attempt" to be "reasonably consistent" with SRA guidelines. Myers argues that a person in his class who receives a sentence after July 1, 1984, for a crime committed before that date cannot be certain what standards and guidelines the Board will use in setting his minimum term. Therefore, according to Myers, the law does not state with sufficient clarity the consequences of violating the criminal code.

A defendant in legal custody under a valid conviction possesses "a residuum of constitutionally protected liberty", *In re Sinka, supra* at 562; *see also Morrissey v. Brewer,* 408 U.S. 471, 482, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972), and may claim protection of the Fourteenth Amendment's due process clause. *In re Sinka, supra* at 563. *See also Bresolin v. Morris,* 88 Wn.2d 167, 169, 558 P.2d 1350 (1977).

The United States Supreme Court has long recognized that "a statute so vague and indefinite, in form and as interpreted", may violate the Fourteenth Amendment. *Winters v. New York,* 333 U.S. 507, 509, 92 L. Ed. 840, 68 S. Ct. 665 (1948). This court specifically has held that the due process clause of the Fourteenth Amendment requires specificity in penal statutes. *Seattle v. Rice,* 93 Wn.2d 728, 731, 612 P.2d 792 (1980). The test is whether men of reasonable understanding are required to guess at the meaning of the statute. *Seattle v. Rice,* at 731. *See also Seattle v. Drew,* 70 Wn.2d 405, 408, 423 P.2d 522, 25 A.L.R.3d 827 (1967).

This court construes remedial statutes liberally in order to effect the remedial purpose for which the Legislature enacted the statute. *State v. Grant,* 89 Wn.2d 678, 685, 575 P.2d 210 (1978). *See also Peet v. Mills,* 76 Wash. 437, 439, 136 P. 685 (1913); *Ingersoll v. Gourley,* 72 Wash. 462, 472, 130 P. 743 (1913). The Legislature clearly enacted RCW 9.95.009(2) to remedy a statutory scheme that otherwise would create gross disparity between sentences set under the indeterminate sentencing scheme and sentences set under the SRA's determinate scheme. Accordingly, this

court should construe the provision liberally to advance the overall legislative purpose. *State v. Grant, supra* at 685. *See also State v. Bishop,* 94 Wn.2d 116, 118, 614 P.2d 655 (1980).

■ The Legislature apparently realized that the Board could not comply exactly with the SRA, and therefore gave the SRA prospective application, subject to the requirement of RCW 9.95.009(2). The requirement that the Board "attempt" to be "reasonably consistent" with the SRA reflects this realization. The Legislature intended that the Board consider and impose sentences reasonably consistent with the SRA. Reasonable persons need not guess at the meaning of the challenged provision. *See Seattle v. Rice, supra; State v. Grant, supra.* Accordingly, we hold that RCW 9.95.009(2) is not void for vagueness under either the Fourteenth Amendment's due process clause, or under article 1, section 3 of the Washington Constitution.

## IV

Myers also argues that RCW 9.95.009(2) violates equal protection. We have held that the Board's conduct constituted an abuse of discretion. Because the court need not consider a constitutional issue if nonconstitutional grounds dispose of the case, *State v. Hall,* 95 Wn.2d 536, 539, 627 P.2d 101 (1981), we decline to address the equal protection issue. Likewise, we decline to address Myers' argument that the Board's conduct constituted arbitrary and capricious action in violation of due process.

## V

■ Because the Board has paroled Myers, a remand to the Board to recompute his sentence would serve no purpose. However, because the many petitions awaiting resolution must be considered on an individual basis, we take this opportunity to articulate a clear standard for future guidance. To this end, we hold that with respect to felons convicted of crimes committed before July 1, 1984, whose minimum terms were fixed pursuant to Board Rule 2.081, a minimum term should not be recomputed if (1) the record

shows the Board considered the SRA presumptive ranges in computing a felon's minimum term, *and* (2) the sentence imposed falls within the standard range, *or* adequate reasons exist in the record to justify a departure from the standard range. Cases decided pursuant to Board Rule 2.081 which do not satisfy this standard should be remanded to the Board for recomputation by order of this court or the Court of Appeals.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.