[No. 10227-1-III. Division Three. January 18, 1990.]

*In the Matter of the Personal Restraint of*
RAMIRO CHAVEZ, *Petitioner.*

*Ramiro Chavez,* pro se.

*Kenneth O. Eikenberry, Attorney General,* and *William L. Williams, Senior Assistant,* for respondent.

MUNSON, C.J.—Ramiro Chavez, by personal restraint petition (RAP 16.4), seeks relief from the Indeterminate Sentence Review Board's (ISRB) imposition of a new minimum term for his 1983 first degree manslaughter conviction, contending this act results in his serving a longer sentence than could be imposed under the Sentencing Reform Act of 1981 (SRA). He also contends he was served with a notice of his alleged parole violations more than 15 days after his arrest. *See* RCW 9.95.121.

In December 1982, Mr. Chavez shot a man between the eyes in the Past Time Tavern in Grandview, Washington. Immediately prior to the shooting, the victim had intervened in a dispute between Mr. Chavez and his common-law wife. Mr. Chavez pleaded guilty to first degree manslaughter and was sentenced on January 11, 1983, to a maximum term of 10 years. The Parole Board,[1] following the recommendation of the prosecuting attorney and the trial judge, set a minimum term of 6 years. Mr. Chavez was paroled on May 7, 1986, and thereafter deported to Mexico. Within 3 months of his deportation, he had returned to Yakima County, Washington. He was charged on July 29, 1986, with the unlawful possession of a handgun. He was convicted of that charge and sentenced to 6 months to be served consecutive to any additional time imposed as a result of his parole violations. The ISRB revoked his parole on the manslaughter conviction and set a new minimum term of 27 months. He was again paroled on November 3, 1988, and subsequently deported. Included in several conditions of his parole were the following: (a) "At no time purchase, own, have in your possession, or under your control any firearm or deadly weapon."; and (b) "Do not, at any time, enter into or return to the United States of America prior to 12–12–92 for any reason."

On April 2, 1989, Mr. Chavez shot and killed a man during an incident at the Race Track Tavern in Yakima,

---

[1] The Parole Board was renamed the Indeterminate Sentence Review Board as of July 1, 1986. RCW 9.95.001.

Washington. The sheriff's deputies, who were in the tavern parking lot, entered the tavern upon hearing the shots; Mr. Chavez aimed his weapon at them, whereupon the deputy shot him three times. Although critically wounded, Mr. Chavez eventually recovered. On July 25, 1989, he entered a *Newton*[2] plea of guilty to murder in the second degree; on July 27 he was sentenced to 205 months, the top of the standard range, with credit for 116 days served. Pursuant to RCW 9.94A.400(2), this later sentence shall not begin until the expiration of his manslaughter sentence.

While the murder charge was pending, an order of parole suspension, arrest and detention was issued on April 21, 1989, by a Washington community corrections officer. Mr. Chavez received a copy of the order together with specification of his alleged parole violations on May 5. Following his conviction on the murder charge, the ISRB revoked his parole and fixed his new minimum term on the 1983 manslaughter conviction as the remainder of that sentence, *i.e.,* December 12, 1992.

Mr. Chavez first contends his new minimum term violates former RCW 9.95.009(2)[3] in that it exceeds the SRA standard range of 31 to 41 months for first degree manslaughter, inasmuch as he has already served 100 months on that sentence.

■ The ISRB is not required to strictly apply the SRA to crimes committed prior to July 1, 1984, although it is directed to review the sentences for those crimes and make

---

[2]*State v. Newton*, 87 Wn.2d 363, 370–71, 552 P.2d 682 (1976).

[3]Former RCW 9.95.009(2) states in part: "When making decisions on duration of confinement, and parole release under RCW 9.95.100 and 9.95.110, the board shall consider the purposes, standards, and sentencing ranges adopted pursuant to RCW 9.94A.040 and the minimum term recommendations of the sentencing judge and prosecuting attorney, and shall attempt to make decisions reasonably consistent with those ranges, standards, purposes, and recommendations: *Provided,* That the board and its successors shall give adequate written reasons whenever a minimum term or parole release decisions [decision] is made which is outside the sentencing ranges adopted pursuant to RCW 9.94A.040. In making such decisions, the board and its successors shall consider the different charging and disposition practices under the indeterminate sentencing system."

those sentences reasonably consistent with the purpose, standards, and ranges of the SRA. *In re Storseth,* 51 Wn. App. 26, 30, 751 P.2d 1217 (1988). When it imposes sentences outside the standard range, the ISRB may consider the pre–SRA offender's level of rehabilitation. The commission of subsequent offenses or numerous probation violations, and whether these incidents evidence an inclination to commit crimes similar to the pre–SRA offense, are matters the ISRB may consider. *Storseth,* at 31; *In re Rolston,* 46 Wn. App. 622, 626, 732 P.2d 166 (1987). When going beyond the standard range, the ISRB is required to give written reasons for its decision. *Addleman v. Board of Prison Terms & Paroles,* 107 Wn.2d 503, 511, 730 P.2d 1327 (1986); RCW 9.95.009(2). Here, the ISRB in its decisions and reasons of September 20, 1989, extended "[t]he new minimum term . . . to extend to his maximum expiration date of 12–12–92." Thereafter, it gave the following reasons:

> Mr. Chavez was paroled for the second time from the commitment crime of manslaughter in the first degree while armed with a deadly weapon. He continues to demonstrate a lack of rehabilitation by having been convicted of taking the life of another human being. We note that he did not serve the recommendation of the sentencing court for the original commitment crime. He was paroled and deported to Mexico. He returned to the United States illegally and his parole was revoked again for felon in possession of a firearm and illegally re–entering the United States. He was paroled the second time and again deported. He returned again illegally to the United States and now has been found guilty of and convicted of murder in the second degree. It should be noted that he pointed the pistol at the police and he himself was shot three times. He was in critical condition but did recover. He refuses to reveal how he obtained the pistol and he denies knowledge of pointing it at the arresting officers. However, he does recall being shot. Given his criminal history and the fact that he has killed two people, the full resources of the State should be brought to bear to incapacitate him as long as it is legally possible.

We hold the reasons given for imposing the maximum term on the manslaughter conviction are consistent with the requirement of RCW 9.95.009(2) and the cases of *Addleman, Storseth,* and *Rolston.*

■ Mr. Chavez also contends he was not timely served with "notice" of his alleged parole violations with 15 days of his arrest as required by RCW 9.95.121.[4] The order of parole suspension, arrest and detention was issued by a Washington community corrections officer on April 21, 1989. Mr. Chavez was served with his copy of the order on May 5, 1989, together with the notice of the alleged violations. It appears his contention is that he should have been served within 15 days of his arrest by the sheriff of Yakima County. This is incorrect. The ISRB may not learn of the arrest until much later, after which it can determine whether a parole violation has occurred. Thus, the 15–day requirement relates only to the time after receipt of notice by the ISRB or its legally designated representative and not the date of arrest by a sheriff or police officer. Within 15 days thereafter the allegations of the violation shall be served on the alleged parole violator. An order of parole suspension, arrest and detention may or may not be issued and served thereafter. We find no error.

The petition is denied.

GREEN and SHIELDS, JJ., concur.

---

[4]Mr. Chavez cites RCW 9.95.125 but that statute relates to entry of the ISRB's decision. The 15–day rule is in RCW 9.95.121:

"Within fifteen days from the date of notice to the department of corrections of the arrest and detention of the alleged parole violator, he shall be personally served by a state probation and parole officer with a copy of the factual allegations of the violation of the conditions of parole, and, at the same time shall be advised of his right to an on–site parole revocation hearing and of his rights and privileges as provided in RCW 9.95.120 through 9.95.126."