[No. 24761-1-I.   Division One.   October 14, 1991.]

*In the Matter of the Personal Restraint of*
THOMAS E. ROBLES, *Petitioner.*

*Lorrain Lee* of *Washington Appellate Defender Association,* for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *Thornton Wilson, Assistant,* for respondent.

KENNEDY, J. — Petitioner Thomas E. Robles filed this personal restraint petition alleging that the determination of his new minimum prison term by the Indeterminate Sentence Review Board (Board) was improper and should be set aside. Finding that the Board adequately specified the reasons for imposing an exceptional sentence and finding that those reasons were supported in the record below, we affirm the Board's imposition of petitioner's new minimum prison term.

I

Petitioner's criminal history is lengthy. Petitioner was first imprisoned in April 1970, after his conviction for robbery. The prosecutor's report for this robbery indicated that the petitioner had a previous juvenile arrest for purse snatching, two juvenile convictions for burglary and robbery and an adult conviction for second degree burglary. Petitioner was on probation for the second degree burglary at the time he committed the robbery.

The Board paroled the petitioner from his robbery sentence in September 1972. As conditions of his parole, the petitioner was required to abstain from drug use and to participate in the Conquest House drug program. Petitioner was charged with assaulting another participant in that program less than 2 weeks after his parole. The Board found him guilty of the assault but reinstated his parole.

As a result of an incident on December 26, 1972, some 2 months after the reinstatement of his parole, the petitioner was charged both with robbery and violation of his parole. The Board then revoked his parole and petitioner was convicted in King County Superior Court of robbery. As a result of this incident, petitioner's probation on his earlier second degree burglary conviction was also revoked. Petitioner then began serving his sentence for the 1972 robbery as well as for his prior convictions for robbery and second degree burglary.

After his readmission to prison, the petitioner was interviewed by a Department of Corrections counselor. The counselor's report indicates that the petitioner stated that he had used drugs before his first imprisonment and that his drug use contributed to his crimes. The petitioner also stated that he had not used drugs since his imprisonment and that the reason he had trouble at Conquest House was because he did not need drug treatment.

In May 1978, the petitioner was paroled to California. The terms of parole included a condition that he abstain from the use of illicit drugs. In November 1978, the petitioner was arrested for possession of narcotics, but the

charges were not pursued. He was, however, issued a warning from the Board. In February 1979, the petitioner was again arrested and charged with burglary, but again the charges were not pursued. However, during his interview after the arrest, the agent noticed drug marks on the petitioner's arm and the petitioner admitted that he had been using drugs within the last week. The petitioner also tested positive for opiates.

The petitioner pleaded guilty to possession of narcotics paraphernalia on March 15, 1979, and was assigned to the Bridge Back Drug Program for 9 months of treatment. After his arrest, petitioner's parole was revoked but it was reinstated on May 7, 1979, after he agreed to return to drug rehabilitation. The drug program was made an express condition of his parole.

The petitioner left the drug program on June 19, 1979. He was then placed in another drug treatment program on June 20, 1979. He left this program on August 1, 1979, and absconded from supervision. The petitioner was recaptured on October 2, 1980, in an arrest with others who were suspected of drug use. It then became apparent that the petitioner had been arrested for a misdemeanor drug offense, under an alias, in July 1980 for which he was later convicted.

The petitioner was then arrested in December 1980, by the Board, for alleged parole violations and was ordered returned to Washington. The petitioner waived a hearing and admitted guilt to all violations except possession of a gun. Petitioner's parole was then revoked by the Board in February 1981. He was placed in work release on May 26, 1981. He then left the facility and jurisdiction illegally on July 14, 1981, but returned the next day. For this breach he was placed on a week's restriction.

Shortly thereafter, on July 21, 1981, while on release, the petitioner assaulted an 11-year-old girl. In the assault, he attempted to kiss the girl. He then choked her and pushed her down a flight of stairs. The petitioner was discovered shortly after the assault and was arrested. He was later

convicted of second degree assault for this incident. Although petitioner claims that this arrest prevented him from returning to the work release facility, thus causing a violation of his work release terms, his supervisors believed that the evidence indicated that he was not planning to return to the facility because he was already outside of his designated area when the assault occurred. Primarily because of this assault, petitioner was terminated in the work release program and returned to prison.

About 3 years later, at the request of the Board, the petitioner was evaluated by a psychologist. The doctor noted that the petitioner admitted to using marijuana, Ritalin, amphetamines and heroin. The doctor rated the petitioner's level of dangerousness as between medium and high, and rated his risk of reoffending at 50 percent.

In anticipation of and to facilitate his possible parole, the petitioner suggested that he might be paroled to a home in Seattle, but a preparole investigation advised against it. California authorities also refused to accept his parole supervision. Petitioner was then reexamined by the same psychologist who had examined him the previous April. The psychologist reiterated his earlier observations but also noted that the petitioner was more dangerous than in 1978, when he was earlier paroled, and that he should be given absolute restrictions against the use of drugs and alcohol. Petitioner was also examined by another psychologist at this time, who noted that the petitioner told him that he had successfully completed two drug programs, had supported his family and did not use drugs when he was last paroled.

In February 1985, the Department of Corrections submitted a status report to the Board which noted that the petitioner had refused urinalysis and had been placed in administrative segregation based on "reliable information" that he had been extorting and pressuring other inmates.

Nevertheless, the petitioner was evaluated by Treatment Alternatives to Street Crime (TASC) to evaluate and combat his drug abuse before parole. The petitioner informed TASC

of some of his drug use but inaccurately informed them that he had not used heroin in 9 years. Based on this representation, TASC concluded that the petitioner did not need drug treatment.

The Board paroled the petitioner on November 26, 1986, and as a condition of parole required him to abstain from substances. After a year of no arrests, the petitioner was eligible for a conditional discharge from parole supervision (CDFS). The CDFS was approved by the Board on November 23, 1987; however, it was not to become effective until it was signed by the petitioner, who had ceased reporting to his parole officer the previous month. Because of this, petitioner's parole was suspended.

The petitioner was arrested in March 1988, for parole violation. At this time, the parole officer discovered that the petitioner had been arrested for burglary, but nevertheless allowed him to sign the CDFS. The Board then reinstated his parole on his CDFS status. The petitioner was again arrested for first degree burglary in August of 1988. The Board then suspended his parole for committing the two burglaries. However, the petitioner was convicted of neither burglary, and he was reinstated on active parole, not including CDFS, in November 1988.

In January 1989, the petitioner was charged with violating his parole status by failing to report to his parole officer. After he was arrested on this warrant in April 1989, the petitioner claimed that he thought his parole had been reinstated with the CDFS status. The Board thus reinstated his parole, but clearly indicated, by requiring his signature so acknowledging, that he was not on CDFS and was required to report within 72 hours of release.

Contrary to these instructions, the petitioner did not report upon release, and the house where he was supposedly residing was found to be a "drug" house whose occupants claimed that he did not live there. After his rearrest, petitioner claimed again that he was not aware that his parole status required him to report. At a subsequent hearing, there was evidence presented that the peti-

tioner was continuing to use drugs, and the Board found him guilty of violating his parole. After the hearing, the petitioner admitted that he had lied about believing that he was on CDFS.

In August 1989, the Board set a 60-month new minimum term. In the decision, the Board gave as its reasons that:

> Mr. Robles has clearly demonstrated a lack of rehabilitation by continuing to fail to abide by the fidelity of parole conditions. When paroled, he fails to comply with the conditions which he has agreed to which effected his parole. Mr. Robles has an extensive criminal history and it is felt that he's had enough opportunities to successfully complete parole. By setting this amount of time, we are sending a clear message to Mr. Robles that the Board will no longer tolerate his nonsense and that any future actions must come from a sincere individual. The Board notes that Mr. Robles is back into drugs, having received a misdemeanor conviction for same.

It is relief from this sentence for which Mr. Robles petitions.

## II

Petitioner is under the Board's jurisdiction because of a crime committed prior to July 1, 1984. RCW 9.94A.905. RCW 9.95.009 was passed in order to provide guidance to the Board, in light of the Sentencing Reform Act of 1981 (SRA), regarding its functions with respect to persons convicted of crimes committed prior to July 1, 1984. RCW 9.95.009(2) provides that:

> When making decisions on duration of confinement, . . . and parole release under RCW 9.95.100 and 9.95.110, the board shall consider the purposes, standards, and sentencing ranges adopted pursuant to RCW 9.94A.040 [the SRA] and the minimum term recommendations of the sentencing judge and prosecuting attorney, and shall attempt to make decisions reasonably consistent with those ranges, standards, purposes, and recommendations: PROVIDED, That the board and its successors shall give adequate written reasons whenever a minimum term or parole release decision is made which is outside the sentencing ranges adopted pursuant to RCW 9.94A.040. In making such decisions, the board and its successors shall consider the different charging and disposition practices under the indeterminate sentencing system.

This section has been interpreted as requiring the Board to consider the SRA on decisions of duration of confinement and parole release. *See Addleman v. Board of Prison Terms & Paroles*, 107 Wn.2d 503, 511, 730 P.2d 1327 (1986).

Petitioner contends that the Board erred in setting a 60-month new minimum sentence because the decision and term were not supported by what would be considered adequate reasons for an exceptional sentence under the SRA. Petitioner specifically contends that "lack of rehabilitation" is not a sufficient reason to justify a term beyond the SRA range and particularly does not demonstrate why 60 months was the appropriate minimum sentence. The Board concedes that the sentence is outside what would be the SRA standard range but argues that the petitioner's lack of rehabilitation is adequate reason to justify a 60-month minimum term.

When reviewing an exceptional minimum sentence by the Board this court must determine whether the Board abused its discretion in setting the sentence and whether the Board gave adequate reasons for its departure. *In re Bolduc*, 51 Wn. App. 225, 229, 753 P.2d 983 (citing *In re Myers*, 105 Wn.2d 257, 714 P.2d 303 (1986)), *review denied*, 110 Wn.2d 1028 (1988).[1] Petitioner argues that the explicit reasons set out in the SRA are the only reasons that can be used in departing from the SRA in sentencing and that lack of rehabilitation is thus not an adequate reason for sentencing departure. Alternatively, the petitioner contends that since rehabilitation is not a purpose of the SRA, any decision which is to be made considering the purposes of the SRA cannot consider rehabilitation. We disagree.

The applicable law indicates that lack of rehabilitation is an adequate reason for an exceptional minimum sentence by the Board. First, though the SRA is to be considered by the Board, it is obviously not meant to replace

---

[1] *But see State v. Brown*, 60 Wn. App. 60, 77, 802 P.2d 803 (1990), *review denied*, 116 Wn.2d 1025 (1991), which questions the abuse of discretion standard in the review of sentences under the SRA scheme itself.

the prior scheme entirely, else distinctions between the two would be irrelevant. The Board is specifically required by the statute to consider the different charging and disposition practices under the indeterminate sentencing system. RCW 9.95.009(2). The prior sentencing scheme still has meaning and is only to be guided by the SRA, not controlled. *See In re Paschke*, 57 Wn. App. 907, 911, 790 P.2d 1250 (1990), *modified on remand*, 61 Wn. App. 591, 811 P.2d 694 (1991). Therefore, the reasons which justify departure from the sentencing range under the SRA need not be the only reasons for departure under the pre-SRA scheme. *See In re Storseth*, 51 Wn. App. 26, 31, 751 P.2d 1217 (1988) ("Our decisions under the act recognize that . . . its reasons for departing from the SRA standard range may necessarily differ from reasons acceptable under the SRA for imposing an exceptional sentence.").

Lack of rehabilitation is clearly the kind of reason not mentioned in the SRA that may justify an exceptional sentence under the pre-SRA scheme. RCW 9.95.009(2), which governs the setting of sentences in light of the SRA, specifically requires a consideration of the old sentencing system, and the prior sentencing scheme specifically allows the Board to consider lack of rehabilitation in setting new minimum terms upon the revocation of parole. The Board sentenced the petitioner pursuant to its authority under RCW 9.95.125 which allows the revocation of parole and imposition of a new minimum sentence. When imposing a minimum sentence, RCW 9.95.052 specifically allows an offender's lack of rehabilitation to be taken into account by the Board. These statutes were both amended after the passage of the SRA, yet the reliance on a lack of rehabilitation in setting sentences was not deleted.

■ Legislation must be read to give effect to all provisions and not to render certain passages superfluous or absurd. *State v. Taylor*, 30 Wn. App. 844, 638 P.2d 630, *rev'd on other grounds*, 97 Wn.2d 724, 649 P.2d 633 (1982). This principle can be accommodated in this instance only if lack

of rehabilitation can be a reason for sentencing guideline departure under the pre-SRA conviction sentencing scheme.

In *In re Chavez*, 56 Wn. App. 672, 675, 784 P.2d 1298 (1990) another division of this court expressly recognized the validity of considering lack of rehabilitation in resentencing for crimes committed before the passage of the SRA. In *Chavez*, the Court of Appeals approved a new minimum sentence beyond the standard range in the SRA with written reasons strikingly similar to the written reasons put forward in the present case. Specifically, the Board in *Chavez* noted that the offender continued "to demonstrate a lack of rehabilitation". *Chavez*, at 675; *see also Bolduc* (lack of rehabilitation may be valid reason for exceptional sentence).

Even if the use of lack of rehabilitation had never been recognized by case law or supported by explicit legislation, petitioner's position would render the function of the Board impossible. As stated in respondent's brief, if consideration of rehabilitation were only appropriate for parole decisions, the Board would be hampered in its ability to revoke parole because the revocation of parole in effect may extend the sentence of the offender beyond the SRA standard range, an outcome not allowed by petitioner's theory.

In oral argument for this appeal, petitioner argued that even if "lack of rehabilitation" could be considered by the Board in setting a new minimum sentence, it was not an "adequate" reason for SRA departure under *Bolduc* or RCW 9.95.009(2) in the present case because no formal findings of fact or conclusions of law were made. We disagree. Although under the SRA, sentences outside the standard range of the sentencing guidelines must set forth the reasons for the exceptional sentence in written findings of fact and conclusions of law (*see* RCW 9.94A.120(3)), RCW 9.95.009(2), which applies in the instant case, only requires "adequate written reasons" for terms outside the sentencing range. Given this distinction, we presume that the Legislature did not mean for the Board to be required to make formal findings of fact and conclusions of law in departing

from the standard sentencing range. Therefore, we find the Board gave adequate reason on the record for imposing an exceptional new minimum sentence.

Relying on *State v. Pryor*, 56 Wn. App. 107, 123, 782 P.2d 1076 (1989), *aff'd*, 115 Wn.2d 445, 799 P.2d 244 (1990), petitioner next claims that the exceptional sentence was an abuse of discretion because the Board did not give adequate reasons for choosing the specific sentence of 60 months. *Pryor* and the later case of *State v. Brown*, 60 Wn. App. 60, 802 P.2d 803 (1990), *review denied*, 116 Wn.2d 1025 (1991) both indicate that the reason for a particular exceptional sentence under the SRA must be apparent from the record and cannot be chosen "out of thin air" or the sentence will be considered an abuse of discretion. Both holdings, which effectively require a less deferential abuse of discretion standard of review, were the result of fear that judges were thwarting the purposes of the SRA by looking for any aggravating factor as an excuse to impose the maximum possible sentence which was too severe when compared to the seriousness of the offense under the SRA.

As stated in *Pryor*:

> Unbridled judicial discretion in sentencing is exactly what the SRA was designed to prevent . . .. The "abuse of discretion" standard set out in [*State v.*] *Oxborrow*, [106 Wn.2d 525, 529-30, 723 P.2d 1123 (1986)] and *State v. Nelson*, 108 Wn.2d 491, 740 P.2d 835 (1987), requires a determination on appeal that "no reasonable person would take the position adopted by the trial court." *Nelson*, at 504-05. *The practical effect of the standard as stated may result in rubber-stamp approval of any sentence up to the maximum term.*

(Italics ours.) 56 Wn. App. at 119-20. *See also State v. Creekmore*, 55 Wn. App. 852, 873-79, 783 P.2d 1068 (1989) (Forrest, J., concurring), *review denied*, 114 Wn.2d 1020 (1990). By requiring a more active review of an exceptional sentence under the abuse of discretion standard, the *Pryor* court, and this Division in *Brown*, were clearly attempting to formulate a more rational, objective analysis for determining whether an exceptional sentence is "clearly excessive" for the particular crime under the SRA sentencing scheme.

■ We interpret the purpose of the requirement of *Pryor* and *Brown*, that the length of a sentence must have some basis in the record, to be to "[e]nsure that the punishment for a criminal offense is *proportionate* to the seriousness of the offense and the offender's criminal history". (Italics ours.) RCW 9.94A.010(1). *See Brown*, 60 Wn. App. at 78. We agree with petitioner that the reasoning of *Brown* and *Pryor* should also apply to exceptional sentencing under the pre-SRA scheme, but we disagree with petitioner's contention that his sentence in the present case was not proportionate to his "lack of rehabilitation", the reason given by the Board for petitioner's exceptional sentence.

A review of the record on appeal indicates that petitioner repeatedly violated the conditions of his parole, though he was given many chances to complete the parole. It would be difficult to envision an example which more clearly demonstrates lack of rehabilitation than that of the instant case. We also note that petitioner failed to successfully complete any of the drug treatment programs to which he was assigned, and he showed continuous criminal and progressively violent behavior which may have been related to his drug use. As noted by the respondent, incarceration is one of the few ways to enforce drug rehabilitation on the petitioner and to mitigate concerns for societal safety, which is to be taken into account in making sentencing decisions. *See* RCW 9.95.009(3).[2] For these reasons, we believe that the length of the sentence was appropriately supported in the record, and that the sentence was not an abuse of discretion by the Board. We therefore deny petitioner's request for relief.

PEKELIS and BAKER, JJ., concur.

---

[2]We note that the Board's own policies permit the periodic review of an inmate's progress. Therefore, if petitioner appears to be amenable to rehabilitation and drug treatment, his sentence may yet be less than 60 months.