[No. 57701-3.   En Banc.   February 6, 1992.]

*In the Matter of the Personal Restraint of*
JAMES HENRY LOCKLEAR, *Petitioner.*

*Suzanne Lee Elliott* and *Rita J. Griffith* of *Washington Appellate Defender Association*, for petitioner.

*Kenneth O. Eikenberry, Attorney General*, and *Thornton Wilson, Assistant*, for respondent.

UTTER, J. — The Indeterminate Sentence Review Board (ISRB or Board) revoked petitioner James Locklear's parole and set a new minimum term of 36 months. This new minimum term exceeds the Sentencing Reform Act of 1981 (SRA) standard range for Locklear's crimes of conviction. RCW 9.94A. Because the ISRB failed to provide sufficient written reasons to support the length of this new minimum term, we vacate the petitioner's new minimum term and remand to the Board for redetermination in light of this opinion.

I

In 1980 Locklear was convicted of first degree burglary and second degree assault, both of which were committed with a deadly weapon. He was sentenced to maximum terms of confinement of 10 years for the burglary and 20 years for the assault, which were to run concurrently. The Board of Prison Terms and Paroles sentenced him to two concurrent 90-month terms pursuant to the minimum term of confinement requirement of RCW 9.95.040.

After serving an original minimum term of 64 months, Locklear was paroled in 1985.[1] This parole was revoked "when he failed to adhere to fidelity of parole conditions and other technical violations." Decision of the ISRB (Apr. 26,

---

[1]RCW 9.95.040 also permits the ISRB to parole an inmate if two-thirds of the Board members are satisfied that the inmate has "demonstrated a meritorious effort in rehabilitation". RCW 9.95.040(4).

1990). Locklear then served an additional 15 months before being paroled again. All told, Locklear served 79 months before this second parole.

His parole was then revoked a second time. The ISRB set Locklear's new minimum term at 36 months, thus placing his total minimum term at 115 months. In support of its decision setting Locklear's minimum term at 36 months, the Indeterminate Sentence Review Board stated:

> [Locklear] was granted another opportunity to demonstrate that he could be law abiding and adhere to the fidelity of parole conditions. He has subsequently failed to do this and demonstrates his lack of rehabilitation by an ongoing use of hard drugs[,] specif[i]cally cocaine and heroin.

Decision of the ISRB (Apr. 26, 1990). No other reasons for the 36-month new minimum term were given in the Board's written decision.

Acting pro se, Locklear then filed a personal restraint petition with Division One of the Court of Appeals on July 23, 1990. Although not a model of clarity, the petition alleged that the Board did not give adequate written reasons to support its decision to impose a new minimum term outside the SRA presumptive range.[2]

The Court of Appeals dismissed Locklear's personal restraint petition on August 22, 1990. Locklear then sought review of the dismissal of his petition by this court pursuant to RAP 16.14(c), which we granted.

## II

■ Is "lack of rehabilitation" a sufficient reason to impose an exceptional new minimum term? This question is most appropriately considered a matter of law. The standard of review for determining the legality of a reason justifying an exceptional minimum term should mirror the corresponding standard of review for determining the legality of a reason justifying an exceptional sentence under the SRA. Under

---

[2] The SRA presumptive range for Locklear's crimes is 57 to 75 months for the second degree assault conviction and 33 to 43 months for the first degree burglary conviction. The statutory maximum sentence for second degree assault is 120 months. *See* RCW 9A.36.021; RCW 9A.20.021.

the SRA, a reviewing court must decide. as a matter of law whether the trial court's reasons justify an exceptional sentence. *See State v. Nordby*, 106 Wn.2d 514, 517, 723 P.2d 1117 (1986).

The relevant statute here is RCW 9.95.009(2), which requires the ISRB to "give adequate written reasons whenever a minimum term . . . decision is made which is outside the sentencing ranges adopted pursuant to [the SRA]"; *Addleman v. Board of Prison Terms & Paroles*, 107 Wn.2d 503, 730 P.2d 1327 (1986). Locklear contends that as a matter of law "lack of rehabilitation" is an insufficient reason to impose an exceptional minimum term. He argues that the remedial effect of RCW 9.95.009(2) compels this court to hold that the purposes of the SRA must control the setting and length of minimum terms.[3] He argues that since the rehabilitation of the offender is no longer a purpose of the SRA and cannot justify an exceptional sentence under the SRA,[4] basing an exceptional minimum term for a pre-SRA offender either wholly or partially on rehabilitative concerns directly clashes with the SRA's primary objective of punishment. According to Locklear's argument, RCW 9.95.009(2) imposes the same requirements on the ISRB that a judge must follow when imposing an exceptional sentence on a criminal defendant.

■ We do not agree. Locklear's argument is based on theory that posits exact congruency between post- and pre-SRA practices and decision-making criteria. However, RCW 9.95.009(2) requires that ISRB decisions on duration of confinement be "reasonably consistent" with SRA purposes, standards, and sentencing ranges. *Addleman*. While the ISRB "shall consider" the purposes, standards, and sentenc-

---

[3]This court identified the remedial nature of RCW 9.95.009(2) in *Addleman v. Board of Prison Terms & Paroles*, 107 Wn.2d 503, 510, 730 P.2d 1327 (1986), and gave the SRA a "specific and limited retroactive effect".

[4]*See In re Mota*, 114 Wn.2d 465, 476, 788 P.2d 538 (1990). Petitioner is incorrect in asserting that the SRA has *no* rehabilitative concerns. Rather, the rehabilitative purposes of the SRA are *limited* to nonviolent first-time offenders and first-time sex offenders.

ing ranges of the SRA, it is not required to make decisions that are based on exactly the same criteria as an SRA exceptional sentence: the Board "shall *attempt* to make decisions *reasonably consistent* with [SRA] ranges, standards, purposes, and [minimum term] recommendations [of the sentencing judge and prosecuting attorney]". (Italics ours.) RCW 9.95.009(2). The plain meaning of this statutory language is that the ISRB's practices and criteria need not mirror the SRA practices and criteria for imposing an exceptional sentence. As interpreted in *Addleman*, the import of RCW 9.95.009(2) is that the ISRB has the discretion to consider the rehabilitative aims of the indeterminate sentencing system when it makes discretionary decisions.[5]

Following this court's decision in *Addleman*, the Court of Appeals held that the requirements of *Addleman* extended to ISRB sentencing decisions made in conjunction with a parole revocation. *In re Storseth*, 51 Wn. App. 26, 32-33, 751 P.2d 1217 (1988).[6] In *Storseth*, the Court of Appeals stated "[t]he Board . . . has discretion to consider a pre-SRA offender's level of rehabilitation when it makes sentencing decisions outside the SRA range." *Storseth*, at 31 (citing *Addleman* (reasons for decisions not conforming to the SRA include insufficient rehabilitation)); *see also In re Rolston*, 46 Wn. App. 622, 732 P.2d 166 (1987) (the rehabilitative goals of the indeterminate sentencing system can be considered in setting a new minimum term).[7]

---

[5]In past decisions, this court has recognized the rehabilitative purpose of the indeterminate sentencing and parole system. *See In re Mota, supra* at 476; *Pierce v. Department of Social & Health Servs.*, 97 Wn.2d 552, 557, 646 P.2d 1382 (1982) (the purpose of parole "is to reintegrate [convicted criminals] into society . . .."). *Pierce* also recognized that parole revocation and more time in jail serves a rehabilitative purpose. The point of recommitting an individual to prison after revoking his or her parole is "to protect society and *improve the chances of rehabilitation*." (Italics ours.) *Pierce*, at 558.

[6]Since the ISRB must set a new minimum term within 30 days of returning a parole violator to a correctional institution, the new minimum term decision is a "sentencing decision[] made in conjunction with a parole revocation". *Storseth*, at 32. *See* RCW 9.95.125.

[7]Since *Storseth* and *Rolston*, several other decisions of the Court of Appeals have also relied on the conclusion that lack of rehabilitation is an adequate

■ We endorse the conclusion in *Storseth* that "lack of rehabilitation" may be considered when setting a new minimum term. *Storseth*, at 31. While *Addleman* did state "[e]xamples of reasons for decisions not conforming to the SRA at the minimum term setting would be aggravating and mitigating circumstances delineated in RCW 9.94A-.390", *Addleman*, at 511, our opinion in *Addleman* did not say nor did it hold that the SRA exceptional sentence factors were the only reasons that could support an exceptional minimum term. The portion of the *Storseth* opinion quoted above is consistent with *Addleman*'s recognition that the RCW 9.95.009(2) mandate for duration of confinement decisions "reasonably consistent" with the SRA does not "superimpose exactly" the SRA upon the indeterminate system. The rehabilitative aim still applies to the prison population sentenced under the indeterminate system. *See* RCW 9.95.009(2) ("In making [minimum term] decisions, the board . . . shall consider the different charging and disposition practices under the indeterminate sentencing system"). Thus, the ISRB may consider an offender's lack of rehabilitation in setting a new minimum term.

## III

Locklear contends that the ISRB decision setting his new minimum term was an abuse of discretion because, he argues, there is nothing in the ISRB's decision and reasons to indicate that the ISRB considered the SRA standard ranges when the Board set his new minimum term. Locklear thus challenges the manner of the ISRB's exercise of discretion in setting his new minimum term. *See, e.g., Ben-Neth v. Indeterminate Sentence Review Bd.*, 49 Wn. App. 39, 42, 740 P.2d 855 (abuse of discretion can arise from the *manner* of the exercise of discretion or from the *result* of the exercise) (opinion by Brachtenbach, J., sitting pro tempore), *review denied*, 108 Wn.2d 1034 (1987). The State argues in

reason to impose an exceptional minimum term. *See In re Robles*, 63 Wn. App. 208, 216, 817 P.2d 419 (1991) (Division One); *In re Chavez*, 56 Wn. App. 672, 675, 784 P.2d 1298 (1990) (Division Three); *In re Bolduc*, 51 Wn. App. 225, 229, 753 P.2d 983 (Division One), *review denied*, 110 Wn.2d 1028 (1988).

response that the Board considered the required statutory factors.

A

■ Before we address these arguments, we review the legal principles, statutes, and case law that outline what the ISRB must do in order to exercise its discretion to impose an exceptional minimum term. In *Storseth* the Court of Appeals began to address the steps the ISRB must take when the ISRB revokes the parole of a parole violator and sets a new minimum term that causes an offender's combined sentence to exceed the SRA standard range. The Court of Appeals stated that the equal protection considerations that base *Addleman* require the ISRB to "engage in an inquiry . . . substantially similar to that followed by a court in setting an SRA sentence." *Storseth*, at 33. Two rationales for this position were advanced. First, the extension of *Addleman* ensured that the statutory requirements of RCW 9.95.009(2), and thus the equal protection concerns, were satisfied. Secondly, the rule ensured that meaningful appellate review of ISRB decisions can occur. *Storseth*, at 33.

Despite its focus on sentencing practices and decision-making criteria "substantially similar" to those under the SRA, the Court of Appeals in *Storseth* recognized the ISRB's "reasons for departing from the SRA standard range may necessarily differ from reasons acceptable under the SRA for imposing an *exceptional* sentence." (Italics ours.) *Storseth*, at 31. While some variation from the SRA was expected, the analogy to the SRA in *Storseth* strongly suggests that the ISRB's procedures for and factors relevant to setting a new minimum term must be substantially similar to the SRA exceptional sentence procedures and factors. *See also Addleman*, at 511. ("Examples of reasons for decisions not conforming to the SRA at the minimum term setting would be aggravating and mitigating circumstances delineated in RCW 9.94A.390 . . ..")

■ The Court of Appeals recently addressed some of the consequences of its *Storseth* rule in *In re Robles*, 63 Wn.

App. 208, 817 P.2d 419 (1991), another case in which a parole violator whose parole was revoked then received an exceptional minimum term. In *Robles*, the petitioner argued that "adequate written reasons" under RCW 9.95.009(2) meant written findings of fact and conclusions of law. The Court of Appeals rejected this claim, observing that if the Legislature had meant formal written findings of fact and conclusions of law as required for an exceptional sentence under RCW 9.94A.120(3), it would have used the phrase "written findings of fact and conclusions of law" and not the words "adequate written reasons". *Robles*, at 217. We agree.

The other consequence of the *Storseth* rule addressed in *Robles* was under what circumstances an exceptional minimum term would be "clearly excessive". The Court of Appeals read this court's decision in *State v. Pryor*, 115 Wn.2d 445, 799 P.2d 244 (1990) as indicating that the reasons for an exceptional sentence must be apparent from the record and not chosen "out of thin air." *Robles*, at 218. The purpose of the *Pryor* requirement, the Court of Appeals opined, is to " '[e]nsure that the punishment for a criminal offense is *proportionate* to the seriousness of the offense and the offender's criminal history." *Robles*, at 219 (citing RCW 9.94A.010(1)). The Court of Appeals transposed the proportional relationship in the SRA between punishment and the factors which determine its severity to the pre-SRA system. Essentially, the Court of Appeals recast the proportional relationship between severity of punishment and seriousness of the offense and offender's criminal history in terms of the pre-SRA focus on rehabilitation and applied it to the exceptional new minimum term. It found that the new minimum term was not "clearly excessive" because the record demonstrated that the length of the new minimum term was "proportionate" to the reason given by the ISRB for the exceptional minimum term, the offender's lack of rehabilitation. Thus, it held that the exceptional minimum term was "appropriately supported in the record." *Robles*, at 219.

The *Storseth-Robles* line of cases provides a satisfactory analytic framework for reviewing exceptional new minimum terms. The analysis in these cases continues the trend of more fully infusing the ISRB's practices with SRA principles that the court began in *Addleman* and *In re Myers*, 105 Wn.2d 257, 714 P.2d 303 (1986). Adopting the analysis of these cases ensures that there will be a record sufficient to permit meaningful and efficient appellate oversight of ISRB minimum term decisions. For this reason, we adopt the *Storseth-Robles* analytic framework for reviewing ISRB decisions setting new minimum terms.

## B

■■ The standard of review for ISRB decisions setting new minimum terms is an abuse of discretion. *In re Myers*, 105 Wn.2d 257, 714 P.2d 303 (1986); *In re Paschke*, 57 Wn. App. 907, 911, 709 P.2d 1250 (1990); *In re Bolduc*, 51 Wn. App. 225, 229, 753 P.2d 983, *review denied*, 110 Wn.2d 1028 (1988). As before, the relevant statute here is RCW 9.95-.009(2), which requires the ISRB to "give adequate written reasons whenever a minimum term . . . decision is made which is outside the sentencing ranges adopted pursuant to [the SRA]". RCW 9.95.009(2); *Addleman*. When the ISRB makes "decisions on duration of confinement", RCW 9.95-.009(2) also states "the board shall consider the purposes, standards, and sentencing ranges adopted pursuant to RCW 9.94A.040 and the minimum term recommendations of the sentencing judge and prosecuting attorney . . .". RCW 9.95.009(2). The use of "shall" in the statute indicates that the ISRB has a statutory duty to consider the information identified above. *See In re Myers*, 105 Wn.2d 257, 262, 714 P.2d 303 (1986) (the use of "shall" in RCW 9.95.009(2) "creates an imperative obligation unless a different legislative intent can be discerned").

A minimum term decision falls into this category of "decisions on duration of confinement". First, a minimum term decision is a more specific example of the general category of "decisions on duration of confinement". Second, the statute

specifically provides that minimum term decisions outside the SRA ranges must have "adequate written reasons".

The implication of this second requirement is that the Legislature contemplated a specific process. When the ISRB seeks to impose a new minimum term that, when added to time already served, would be an exceptional sentence under the SRA, the Board will have first consulted the SRA standard ranges and determined them to be an inappropriate period of confinement. Furthermore, the use of the word "written" indicates that the Board will record the reasoning that supports its decision.

■ This reading of the statute is neither novel nor new. It is based on the Court of Appeals' observation that RCW 9.95.009(2) requires the ISRB to consider the purposes, standards, and sentencing ranges of the SRA, and the original minimum term recommendations of the sentencing judge and prosecuting attorney; and to provide a written record of its decision when it imposes a new minimum term outside the SRA standard range. *See In re Bolduc, supra* at 228 (no abuse of discretion when ISRB imposed an exceptional minimum term after expressly considering the SRA guideline ranges).

In this case, the ISRB made no such review of the SRA guideline ranges in its decision and reasons. There is no mention of the SRA sentencing ranges for the original offenses of conviction. Nor did the ISRB make any reference to the minimum term recommendation of the sentencing judge. The ISRB only referred to the prosecuting attorney's original sentencing recommendation. The Board's written reasons in this case fall short of the statutory requirements of RCW 9.95.009(2).

ISRB rule 2.050[8] also lists five "[f]actors considered in setting a new minimum term": (1) the length of time previously incarcerated for the offense of conviction; (2) the SRA

---

[8]The relevant rule in force when the ISRB set Locklear's new minimum term, former rule 2.050, is an earlier edition of the rule now in force. *Cf.* WAC 381-30-050; State Register 91-14-029. For the background on the inclusion of the ISRB rules in the State Register and Washington Administrative Code, see

ranges of the original offense of conviction; (3) the original recommendation of the committing judge and prosecuting attorney; (4) whether the parole violation resulted in an SRA conviction and any jail time as a result of that conviction; and (5) the nature of both the original offense of conviction and the parole violation behavior.[9] These are not just factors which may be considered by the Board at its discretion. Rather, they are "factors considered" by the ISRB when setting a new minimum term. The phrase "factors considered . . ." indicates that the Board itself recognizes a mandatory statutory duty to consider these factors when setting a new minimum term. ISRB rule 2.050 thus reinforces the conclusion that the ISRB must consider these factors in its written decisions when it sets an exceptional minimum term.

The State argues that this failure to explicitly refer to the SRA standard ranges when setting his new minimum term is logically insufficient to prove that the Board did not consider the SRA ranges. Brief of Respondent, at 24. The State claims that the failure to include "a boilerplate statement to indicate it [had considered the SRA ranges]" is inconclusive to prove that the Board did not consider the SRA ranges. Brief of Respondent, at 24.

This argument misses the point: there must be some written indication that the Board exercised its discretion in accordance with the applicable statutes and rules. Moreover, the State's position would frustrate meaningful appellate

---

former WAC Title 381, at 1938 (1981-1982 Supp. vol. 10B). The version of rule 2.050 that was used to determine his new minimum term was adopted by the ISRB on September 11, 1989, but was not filed for publication in the Washington State Register until June 26, 1991. Since the Administrative Procedure Act does not apply to the ISRB, RCW 34.05.030(1)(c), the Board's failure to follow the statutory notice and publication requirements of the APA does not invalidate this particular exercise of the Board's rule-making authority. While the Board has now published its rules, *see* State Register 91-14-029 (to be codified at WAC 381-30), we note the Board thwarts efficient and effective judicial oversight of minimum term settings when it fails to timely publish its rules.

[9]These same factors appear in the current rule, State Register 91-14-029 (1991) (to be codified at WAC 381-30-050) (effective July 27, 1991).

review of minimum term settings. Appellate review is the only way to determine if the Board is following the requirements of RCW 9.95.009(2) when setting a new minimum term, and thus complying with equal protection requirements. Appellate oversight of an administrative body is frustrated when as in this case the ISRB's minimum term decision does not refer in any reasoned way to the factors which the Legislature has said must be considered.

While we express no opinion as to the length of Locklear's new minimum term, the record before us does not demonstrate that the ISRB made the necessary inquiries and took the required steps in order to impose an exceptional minimum term. The ISRB may have valid reasons for imposing an exceptional minimum term on Locklear, but it did not provide the Court of Appeals with those reasons. We will not speculate as to what those reasons are. Accordingly, we vacate the ISRB decision of April 26, 1990, setting Locklear's new minimum term and remand this matter to the ISRB for reconsideration consistent with our opinion.

DORE, C.J., and BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

After modification, further reconsideration denied April 8, 1992.