[No. 22288-4-II. Division Two. July 2, 1998.]

*In the Matter of the Personal Restraint of* JERRY ECKLUND, *Petitioner.*

442

*John Henry Browne* of *Browne & Ressler,* for petitioner.
*Christine O. Gregoire, Attorney General,* and *Talis M. Abolins, Assistant,* for respondent.

HUNT, J. — Jerry Ecklund filed a personal restraint petition (PRP) challenging the Indeterminate Sentence Review Board's (Board) refusal to release him after serving a standard minimum term of life imprisonment for a 1979 first degree murder conviction. A primary factor in the Board's denial of parole was Ecklund's persistent claim of innocence. We grant his petition and remand to the Board for reconsideration of parole based on factors other than Ecklund's denial of guilt.

## FACTS
### A. Conviction

Murder victim Betty Jensen met Ecklund at a bar on

July 4, 1979. When her companions decided to walk to a nearby party, Jensen chose instead to ride with Ecklund; she was last seen getting into Ecklund's car. The next day, Jensen's dead body was found lying by a bridge. She had been shot four times and run over by a car. The tire marks matched the tire treads on Ecklund's car. The bullets were similar to those used in Ecklund's gun. Fibers from a green towel were found near the body, in Ecklund's car, and in Ecklund's house. Also found in Ecklund's car, was part of an earring that matched an earring worn by Jensen.

Ecklund has consistently maintained that he did not kill Jensen. Rather he claims that he blacked out or fell asleep; he does not remember what happened that night; and the real murderer "set him up." A jury convicted Ecklund of murder, for which he was sentenced in 1979 to a mandatory life term in prison.

## B. Original Minimum Term

The offense, conviction, and sentencing occurred before enactment of the Sentencing Reform Act of 1981 (SRA), RCW 9.94A. Following passage of the SRA, the Board met and determined that Ecklund's standard range sentence would be 236-316 months under SRA standards. At that time, the Board was aware that: Ecklund had no prior juvenile or adult criminal record; he had been a fire department employee for about 15 years; he admitted to drinking "quite a bit" the night of the murder; and he had taken extraordinary steps to prove his innocence, without success. The Board stated that *"there are no circumstances regarding the crime that would justify going to the top of the range."* (Emphasis added.) Consistent with prosecutor's office's and probation office's recommendations, the Board set a midrange minimum term of 276 months.

During the early years of his imprisonment, Ecklund committed seven serious infractions, five for possession of alcohol or narcotics; the last infraction occurred in October

1985. He has committed no further infractions since then; rather he has complied with all requirements.

## C. First Parole Hearing

The Board first considered Ecklund's eligibility for parole in March 1994. The Board noted: (1) that his "overall institutional adjustment is adequate and he is not seen as difficult or management problem in the institution"; (2) that state psychiatrist Dr. Helmut Riedel's report of June 1993 indicated "no evidence of severe pathology" and that Ecklund "would be considered adult anti-social with use of cannabis [sic] and alcohol." The Board denied parole because Ecklund had not yet served his minimum term, he continued to deny guilt and his substance abuse problem, and he had not yet dealt with his emotions. The Board stated:

It is clear in the interview with him today, that he has no understanding of the circumstances of the crime, his circumstances in prison and the anger that is obviously here in relationship to his incarceration. The physical evidence is quite literally overwhelming, and Mr. Ecklund simply sets that aside and offers no explanation for the physical evidence that is presented. What is probably most disturbing to the Board is, as noted above, that he is emotionless. If one makes the assumption that he is innocent and is wrongly convicted and has now spent 173 months in prison wrongly convicted, he ought to be very angry. It is clear that he has absolutely stuffed those emotions and has not dealt with anything and it is our perception that he is a time bomb waiting to go off . . . .

. . . He has no understanding of this crime, no understanding of his personal emotions, and clearly needs to be involved in counseling with regard to those issues. It seems clear he is disconnected from himself in many ways . . . . He also sets aside all of the emotions that would go along with being wrongly convicted.

## D. Second Parole Hearing

In May 1995, the Board again denied Ecklund parole, for

substantially the same reasons as before, stating that his prospects for rehabilitation were poor and his continued denial of guilt was a risk factor. The Board noted that Ecklund had participated in and completed a chemical dependency program and was declared in need of no further dependency programs unless he relapsed. Yet the Board opined that Ecklund had failed to admit or to address his alcohol problem. Their report stated:

> The risk to the community is simply too high because of his total denial of both this offense and what clearly appears to be alcoholism. Until he can deal with at least his substance abuse problem, he is too great a risk to release into the community. He should be commended for doing well in other respects as he has not had any infractions since 1985 and continues to be employed in the institution. Prior to the next .100 hearing, the Board would expect that Mr. Ecklund would involve himself in Victim Awareness, Alternatives to Violence, and attendance at AA/NA.

The Board ordered Ecklund to serve an additional 24 months.

### E. Third and Most Recent Parole Hearing

Following the 1995 hearing, Ecklund participated in additional substance abuse programs and began attending weekly Alcoholics Anonymous meetings. He took stress/anger management classes, "Alternatives to Violence," "Leonard Shaw" seminars, and "Breaking Barriers." He continued his employment as a machine tool operator in the prison laundry and had no infractions.

Ecklund also participated in another psychological evaluation with Dr. Riedel. Riedel found "no signs of a formal mood or thought disorder" and no indication of "severe mental health problems," but noted that Ecklund continued to deny guilt and a substance abuse problem. Dr. Riedel also reported:

> [H]e lacks many of the risk factors that otherwise would

indicate a high risk for reoffending; no juvenile delinquency, no prior acts of physical violence documented, no prior adult offenses other than traffic violations, and no major infractions during incarceration involving fighting or assaultiveness. He has in fact maintained a major infraction-free record during his incarceration since 1985, has programmed adequately, and involved himself in a number of constructive activities. *Thus, given all the years he has served, one wonders whether it would now make much difference in terms of his risk of reoffending whether or not he admits to having committed the instant offense.*

(Emphasis added.) Finally, Dr. Riedel recited the previous 1993 psychological evaluation, which had rated Ecklund's parolability as fair and that "his risk of reoffending does not appear to be imminent or very high if he can avoid relapse into alcohol abuse."

On October 8, 1996, the Board considered Dr. Riedel's report and again denied Ecklund parole, stating:

> This panel continues to be *concerned* with Mr. Ecklund's parolability, *primarily due to the fact that he continues to deny his involvement in the crime*; however all of the evidence is in the contrary. He continues to deny the fact that he is an alcoholic and now he grudgingly admits that perhaps he does or did have an alcohol problem . . . .
>
> . . . .
>
> It is the recommendation of this panel to find Mr. Ecklund not parolable and add 60 months based on *a history of denial and concern regarding his denial* as to what kind of risk he would present in returning to the community.

(Emphasis added.)

Ecklund has served more than his standard range maximum of 320 months, less good time. With the additional 60 months ordered by the Board, Ecklund is now serving an exceptional minimum term.

In his personal restraint petition, Ecklund challenges his exceptional minimum term. He contends the Board's reasons for denying parole are not supported by the facts,

do not support an exceptional minimum term, and violate his Fifth Amendment right against self-incrimination.

## ANALYSIS
### A. Standard of Review

■ To prevail on a PRP, a petitioner must establish either actual and substantial prejudice arising from constitutional error or nonconstitutional error that inherently results in a "complete miscarriage of justice." *In re Personal Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990). Ecklund presents a prima facie showing of both types of error.

■ On review we determine whether the Board's reasons for imposing an exceptional, additional term of confinement are supported both factually, using a clearly erroneous standard of review, and as a matter of law. *State v. Ross*, 71 Wn. App. 556, 561-62, 861 P.2d 473, 883 P.2d 329 (1993). Here, insofar as the Board's reasons for imposing an exceptional term of confinement are premised on Ecklund's denial of guilt, these reasons are not supported factually or as a matter of law.

### B. Board's Duty

■ The Board has a statutory duty to conduct a plenary review of a convicted offender's history when making decisions regarding release and confinement:

> To assist it in fixing the duration of a convicted person's term of confinement, and in fixing the conditions for release from custody on parole, it shall not only be the duty of the board . . . to thoroughly inform itself as to the facts of such convicted person's crime but also to inform itself as thoroughly as possible as to such convict as a personality. The department of corrections and the institutions under its control shall make available to the board . . . on request its case investigations, any file or other record, in order to assist the board in developing information for carrying out the purpose of this section.

RCW 9.95.170. Thus, each time the Board considers a

petitioner's possible parole release or duration of confinement, it must review his entire history.

■ The Legislature requires the Board to set post-SRA minimum terms for pre-SRA offenders that are "reasonably consistent" with the SRA's purposes, standards, and sentencing ranges, taking into consideration the minimum term recommendations of the trial judge and prosecutor. *In re Personal Restraint of Locklear*, 118 Wn.2d 409, 413-14, 823 P.2d 1078 (1992); RCW 9.95.009(2). But unlike sentencing courts, the Board may consider additional factors, such as "rehabilitative aims" and future dangerousness, in determining a minimum term for a prisoner sentenced before enactment of the SRA. *Locklear*, at 413-14. But if the Board departs from the presumptive SRA range, it must give "adequate written reasons" in support of the exceptional sentence. RCW 9.95.009(2).

The Legislature has further provided that: "The board shall not, however, until his maximum term expires, release a prisoner, unless in its opinion his rehabilitation has been complete and he is a fit subject for release." RCW 9.95.100 (repealed by RCW 9.95.900 for offenses committed on or after July 1984). The Board must also consider future dangerousness to the public before setting a new minimum term of confinement or granting parole. RCW 9.95.009(2), as interpreted in *Addleman v. Board of Prison Terms & Paroles*, 107 Wn.2d 503, 730 P.2d 1327 (1986), and cited in *Locklear*, at 414.

> [RCW 9.95] authorizes the Board to set the minimum discretionary term of imprisonment before expiration of the mandatory minimum term. As noted by the Washington Supreme Court, this is a substantial restriction on the discretionary ability of the Board to deny a parole hearing. *See* [*In re Personal Restraint of Powell*, 117 Wn.2d 175, 814 P.2d 635,] 641-42 [(1991)]. *No longer does the possibility exist that an inmate can be forever denied parole.* [A prisoner] is now guaranteed a parole hearing at the end of the discretionary minimum term.

*Powell v. Ducharme*, 998 F. 2d 710, 714 (9th Cir. 1993), *cert. denied*, 516 U.S. 825, 116 S. Ct. 91, 133 L. Ed. 2d 47 (1995) (emphasis added).

 Here, the Board has indicated it will consider Ecklund rehabilitated only if he admits guilt and alcoholism; until then, the Board considers him too great a danger to society. Given the unlikelihood that Ecklund will renounce his persistent protestations of innocence after nineteen years of incarceration, the Board's withholding parole until he admits guilt is tantamount to forever denying parole. The law does not accord the Board such broad discretion. *Id.* at 714.

### 1. Denial of Guilt

 Contrary to the professional opinion of the psychiatrist[1] who examined Ecklund, the Board reached its own conclusion that Ecklund is at risk to reoffend, primarily because he claims innocence.[2] The Board further assumed that Ecklund cannot meaningfully participate in further counseling or rehabilitation until such time as he admits guilt. But use of denial of guilt as an aggravating factor justifying an exceptional sentence violates a convicted offender's constitutional right to remain silent. *State v. Garibay*, 67 Wn. App. 773, 782, 841 P.2d 49 (1992). Additionally, it is a miscarriage of justice for the Board to resurrect this point years after it considered Ecklund's denial of guilt and found deviation from the standard range minimum to be unwarranted, especially absent identified intervening factors justifying a departure from Ecklund's original midrange term.

Moreover, refusing parole based on denial of guilt after an offender has served his maximum standard range is not

---

[1]Dr. Riedel does not view Ecklund's refusal to admit guilt as creating a likelihood of reoffending; rather, he doubts that Ecklund's confession would make much difference in his prospects for rehabilitation, especially after so many years of confinement.

[2]At Ecklund's October 1996 hearing, the Board stated, "This panel continues to be concerned with Mr. Ecklund's parolability, primarily due to the fact that he continues to deny his involvement in the crime; however, all of the evidence is in the contrary."

"reasonably consistent" with SRA standards. Under the SRA, a trial court cannot impose an exceptional sentence based on an offender's exercise of his or her constitutional rights. *See State v. Crutchfield*, 53 Wn. App. 916, 927, 771 P.2d 746 (1989) ("the exercise of a constitutional right should not be used as a reason for departure from the standard range"); *Garibay*, 67 Wn. App. at 782. As stated in *Garibay* at 782:

> . . . Mr. Garibay has a constitutional right to remain silent, and the sentencing court's use of silence to show "lack of remorse" as an aggravating factor violates that right; it is tantamount to requiring him to admit he is guilty of the crime charged. Trial courts may not use a defendant's silence or continued denial of guilt as a basis for justifying an exceptional sentence.

Similarly, the Board cannot use denial of guilt to show lack of rehabilitation or future dangerousness. Allowing the Board to do so would be tantamount to "holding that the defendant who exercises his constitutional right not to incriminate himself . . . has thereby operated to increase his own punishment." *Crutchfield*, 53 Wn. App. at 926.[3]

An aggravating factor will not support an exceptional sentence unless (1) the Legislature did not consider it in establishing standard range for the charged crime, and (2) it is sufficiently substantial and compelling to distinguish the offense in question from others in the same category. *State v. Way*, 88 Wn. App. 830, 833, 946 P.2d 1209 (1997) (citing *State v. Grewe*, 117 Wn.2d 211, 218, 813 P.2d 1238 (1991)). In setting standard range sentences of the SRA, the Legislature implicitly acknowledged the constitutional right of an accused to deny involvement in crimes with which he is charged. Ecklund's denial of guilt is not sufficiently compelling or rare so as to justify deviation from the standard range sentences for homicide set by the Legislature.

---

[3]The Board may also consider the evidence and facts of the crime, the offender's history, and emotional state.

 Further, the record does not support the Board's conclusion that Ecklund's continued protestations of innocence render him at risk to reoffend. Although the Board need not defer to Dr. Riedel's opinion that admission of guilt at this juncture would be of marginal significance, the Board's reasons for an exceptional sentence must find some support in the record. *State v. Estrella*, 115 Wn.2d 350, 355-56, 798 P.2d 289 (1990). "[U]nsupported opinions and conclusions, rather than evidentiary facts," cannot support an exceptional term. *See In re Personal Restraint Petition of Vega*, 59 Wn. App. 673, 677, 800 P.2d 849 (1990) (citing RCW 9.94A.370(2); *State v. Wood*, 42 Wn. App. 78, 83, 709 P.2d 1209 (1985)).

## 2. Denial of Substance Abuse Problem

The Board also cites Ecklund's failure to acknowledge his substance abuse problem as creating a high risk to reoffend. Although he did not admit being an alcoholic to the Board's satisfaction,[4] he did "grudgingly admit" his alcohol problem. Dr. Riedel opined that Ecklund's likelihood of reoffending was low, unless he began drinking or abusing drugs. He also noted that Ecklund's "major risk factors center around his history of limited substance abuse."

The record shows that Ecklund has addressed his alcohol problem to a considerable extent: He attends weekly AA meetings, has successfully completed all available Board-prescribed programs,[5] and was discharged from substance abuse counseling with a "hopeful" prognosis. Moreover, in 1992 a prison-sponsored chemical dependency program

---

[4]According to the Board's report, "He continues to deny the fact that he is an alcoholic and now he grudgingly admits that perhaps he does or did have an alcohol problem."

[5]At Ecklund's October 1996 hearing, at which the Board added 60 months to his minimum term, the Board noted, "The Board last saw Mr. Ecklund in May of 1995 and requested that he participate in some programming to include Victim Awareness, Alternatives to Violence, and participation in NA (Narcotics Anonymous) and/or AA (Alcoholics Anonymous). He has complied with those expectations with the exception of Victim Awareness, which is not offered at this facility." The record reflects no reason why Ecklund could not participate in further Board-ordered counseling that is not dependent upon admission of guilt.

determined he was no longer in imminent need of further programs.

Yet the Board apparently considers as a factor in denying parole, Ecklund's failure to admit that he had a substance abuse problem. In light of the psychiatrist's prediction of future criminal involvement if Ecklund becomes involved in substance abuse, the Board could reasonably infer that Ecklund is more likely to become re-involved with drugs and alcohol, thus increasing his risk of reoffending, if he denies this problem.

3. General Psychological Problems

The Board was also concerned with Ecklund's "emotionless" demeanor, holding in his emotions, and inadequate dealing with his anger over being wrongfully imprisoned for 20 years if innocent. The Board stated, "Those are issues he must deal with and must have some resolution to before he is considered a viable candidate for parole."

The Board is entitled to consider Ecklund's emotional state in deciding when to release him. But the Board's conclusion that he is a "time bomb" and a danger to society finds little factual support in the record. Dr. Riedel noted: that Ecklund suffered from no "formal mood or thought disorder" and no "severe mental health problems"; and that Ecklund's chances of adapting to parole are "fair" and his risk of reoffending is not "imminent or very high." If Ecklund's emotional state is to be a factor in denying Ecklund parole, it, too, must be based on facts unrelated to Ecklund's denial of guilt.

## CONCLUSION

We cannot discern from the record whether the Board would have concluded that Ecklund is not rehabilitated, is dangerous, or is likely to reoffend had it not improperly considered Ecklund's denial of guilt. Quoting the Supreme Court:

> While we express no opinion as to the length of [the] new minimum term, the record before us does not demonstrate that

454

the ISRB made the necessary inquiries and took the required steps in order to impose an exceptional minimum term. The ISRB may have valid reasons for imposing an exceptional minimum term . . . but it did not provide the Court of Appeals with those reasons. We will not speculate as to what those reasons are.

*Locklear,* 118 Wn.2d at 421. Accordingly, we grant the petition, vacate the Board's setting of Ecklund's new minimum term on October 8, 1996, and remand to the Indeterminate Sentence Review Board for reconsideration. The Board shall reconsider Ecklund's parolability, without regard to his claim of innocence and denial of guilt. In light of our ruling, we need not address the remaining issues.

HOUGHTON, C.J., and MORGAN, J., concur.