[No. 66992-9. En Banc.]
Argued March 10, 1999. Decided October 7, 1999.

*In the Matter of the Personal Restraint of* JERRY
ECKLUND, *Respondent.*

*Christine O. Gregoire, Attorney General,* and *Donna H. Mullen, Assistant,* for petitioner.

*Browne & Ressler,* by *John H. Browne,* for respondent.

ALEXANDER, J. — The Indeterminate Sentence Review Board (Board) denied parole to Jerry Ecklund, a convicted murderer, and extended his minimum term of imprisonment after it determined that he posed a threat to community safety and was not parolable. The Board based its decision in part upon Ecklund's refusal to admit responsibility for the underlying crime. Ecklund filed a personal restraint petition (PRP) with the Court of Appeals alleging that the Board: (1) failed to give appropriate consideration to the Sentencing Reform Act of 1981, RCW 9.94A (SRA); (2) failed to give adequate written reasons for its decision; and (3) violated Ecklund's right against self-incrimination. The Court of Appeals granted Ecklund's petition and remanded to the Board for reconsideration without regard to Ecklund's denial of guilt. The Board sought discretionary review from this court and we granted it. We reverse the Court of Appeals and affirm the decision of the Board.

In 1979, the State of Washington charged Jerry Ecklund with the first degree murder of Betty Jensen. Notwithstanding Ecklund's claim of innocence at trial, a jury found him guilty of the charge.[1] *See* Personal Restraint Pet. (July 11, 1997), *In re Personal Restraint of Ecklund*, No. 22288-4-II, slip op. at 1 (Wash. Ct. App. July 2, 1998); *In re Personal Restraint of Ecklund*, 91 Wn. App. 440, 444, 957 P.2d 1290 (1998). Because Ecklund's conviction occurred prior to July 1, 1984, the SRA did not apply and the trial judge sentenced him to a maximum term of life in prison.

In 1990, following passage of the SRA, the newly-created Indeterminate Sentence Review Board met and set a minimum term for Ecklund of 276 months (23 years), which was equivalent to a standard range term under the SRA.[2] *See Ecklund*, 91 Wn. App. at 444; Washington State Supreme Court Mot. for Discretionary Review, *Ecklund v. Indeterminate Sentence Review Bd.*, No. 66992-9, Attach. 7, at 1 (hereinafter Mot. for Discretionary Review). In 1994, following a parolability hearing, the Board determined that Ecklund was not parolable at that time, emphasizing that he had "no understanding of the circumstances of the crime . . . and [that] it is our perception that he is a time bomb waiting to go off." Mot. for Discretionary Review, Attach. 9, at 2; *Ecklund*, 91 Wn. App. at 445.

In May 1995, the Board held another parolability hear-

---

[1]The factual circumstances leading to Ecklund's conviction were as follows:

"Murder victim Betty Jensen met Ecklund at a bar on July 4, 1979. When her companions decided to walk to a nearby party, Jensen chose instead to ride with Ecklund; she was last seen getting into Ecklund's car. The next day, Jensen's dead body was found lying by a bridge. She had been shot four times and run over by a car. The tire marks matched the tire treads on Ecklund's car. The bullets were similar to those used in Ecklund's gun. Fibers from a green towel were found near the body, in Ecklund's car, and in Ecklund's house. Also found in Ecklund's car, was part of an earring that matched an earring worn by Jensen.

"Ecklund has consistently maintained that he did not kill Jensen. Rather he claims that he blacked out or fell asleep; he does not remember what happened that night; and the real murderer 'set him up.' " *Ecklund*, 91 Wn. App. at 443-44.

[2]After the passage of the SRA, the Board of Prison Terms and Paroles was "redesignated" as the "Indeterminate Sentence Review Board." RCW 9.95.001. The Board has jurisdiction over persons convicted of crimes committed prior to July 1, 1984. RCW 9.95.009(2).

ing, at the conclusion of which it denied Ecklund's request for parole and added 24 months to his minimum term, reasoning that "Mr. Ecklund claims he is not guilty of an extremely serious crime" and "continues to deny he has an alcohol problem . . . [despite] admit[ting] to having blackouts in the past. . . . The risk to the community is simply too high because of his total denial of both this offense and what clearly appears to be alcoholism." Mot. for Discretionary Review, Attach. 10, at 3.

In October 1996, the Board met again and, although noting that Ecklund had participated in various programs—Alternatives to Violence, Narcotics Anonymous, and Alcoholics Anonymous—found him "not parolable" and added 60 months to his minimum term, again citing his denial of involvement in the murder of Betty Jensen and his alcoholism, as well as the fact that Ecklund's "story regarding the night of the Murder has consistently changed during the times that the Board has met with him." Mot. for Discretionary Review, Attach. 3, at 1, 2.

In November 1997, the Board again considered Ecklund's parolability "and determined that its decision would remain the same." Supplemental Resp. to Personal Restraint Pet. at 1. At this point Ecklund had served approximately 216 months in jail or prison, effectively a sentence of over 300 months when credit for "good time" is considered. Personal Restraint Pet. at 1; *Ecklund*, 91 Wn. App. at 447. His sentence, therefore, exceeded the standard range under the SRA and was equivalent to an exceptional sentence.

Ecklund then filed a PRP with the Court of Appeals, Division Two, claiming that the Board "violated RCW 9.95.009(2) . . . because it failed to give appropriate consideration to the SRA standard range and failed to give adequate written reasons for its decision" and that it "unconstitutionally punished [him] for exercising his privilege against self-incrimination." Personal Restraint Pet. at 3, 8. That court granted his petition on the basis that "insofar as the Board's reasons for imposing an exceptional

term of confinement are premised on Ecklund's denial of guilt, these reasons are not supported factually or as a matter of law." *Ecklund*, 91 Wn. App. at 448. It, therefore, vacated the minimum term, and remanded to the Board to "reconsider Ecklund's parolability, without regard to his claim of innocence and denial of guilt." *Ecklund*, 91 Wn. App. at 454. We granted the State's petition for discretionary review.

## A. STANDARD OF REVIEW

■ The Court of Appeals indicated that on review it was to "determine whether the Board's reasons for imposing an exceptional, additional term of confinement are supported both factually, using a clearly erroneous standard of review, and as a matter of law." *Ecklund*, 91 Wn. App. at 448 (citation omitted). This is not the correct standard of review. Rather, decisions of the Board are reviewed under an "abuse of discretion standard." *See In re Personal Restraint of Locklear*, 118 Wn.2d 409, 418, 823 P.2d 1078 (1992) (holding that "[t]he standard of review for ISRB decisions setting new minimum terms is an abuse of discretion"); *In re Personal Restraint of Whitesel*, 111 Wn.2d 621, 628, 763 P.2d 199 (1988) (holding that "the courts are *not* a super Indeterminate Sentencing Review Board and will not interfere with a Board determination in this area unless the Board is first shown to have *abused its discretion* in setting a prisoner's discretionary minimum term. In short, the courts will not substitute their discretion for that of the Board.") (footnote omitted); *In re Personal Restraint of Myers*, 105 Wn.2d 257, 264, 714 P.2d 303 (1986) (holding that "this court generally will not interfere with a Board determination unless the Board abuses its discretion in setting a prisoner's discretionary minimum term").[3]

---

[3]The Court of Appeals cited *State v. Ross*, 71 Wn. App. 556, 861 P.2d 473, 883 P.2d 329 (1993), to support the standard of review it used. *See Ecklund*, 91 Wn.

## B. THE BOARD'S DENIAL OF PAROLE

The overriding issue before this court is whether the Board may use a prisoner's denial of guilt as a basis, at least in part, for denying parole and imposing an exceptional sentence. There are two subparts to this issue: (1) whether the Board's use of Ecklund's denial of guilt as a factor for denying parole and imposing an exceptional sentence violated his constitutional right against self-incrimination; and (2) if not, did the Board abuse its discretion in setting the exceptional minimum term that it did.[4]

### 1. THE FIFTH AMENDMENT

■ The Court of Appeals determined that the Board's "use of denial of guilt as an aggravating factor justifying an exceptional sentence violates a convicted offender's constitutional right to remain silent." *Ecklund*, 91 Wn. App at 450. The State contends that the Court of Appeals' holding is erroneous because:

[T]he Fifth Amendment privilege against self-incrimination does not apply to criminal activity for which the individual has already been convicted and sentenced. . . . [and] the decision

---

App. at 448. *Ross*, however, is inapplicable to this case because it dealt with the initial sentencing of a convicted defendant by a trial judge under the SRA, rather than a determination of a prisoner's minimum term by the Board. *See Ross*, 71 Wn. App. at 561-62.

[4]The dissent would limit the State's opportunity to appeal the Court of Appeals' decision, asserting that the only issue it preserved for review was whether Ecklund's right against self-incrimination had been violated. Accordingly, the dissent contends that, regardless of our determination of self-incrimination issue, the Court of Appeals must be affirmed because it also based its decision on independent statutory grounds which "were not properly preserved for our review." Dissenting op. at 179. The dissent's contention is, in our view, erroneous. In its motion for discretionary review, the State clearly preserved the issue regarding whether the Board abused its discretion when it extended Ecklund's minimum term, which, as noted above, is the standard of review the Court of Appeals should have applied. In addition, contrary to the dissent's assertion, the State expressly challenged the remainder of the Court of Appeals' opinion. Mot. for Discretionary Review at 14 ("An offender's failure to confront his own criminal behavior is relevant to the Board's assessment of his parolability.").

is in conflict with this Court's recent ruling that the Board's setting of a minimum term is not part of a criminal proceeding, and that the Board may even consider compelled disclosures of prior uncharged criminal conduct. *State v. King*, 130 Wn.2d 517, 925 P.2d 606 (1996).

Mot. for Discretionary Review at 8.

 The Fifth Amendment mandates that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."[5] U.S. CONST. amend. V. Similarly, article I, section 9 of the Washington Constitution provides that "[n]o person shall be compelled in any criminal case to give evidence against himself."[6] In order to invoke this protection provided by the Fifth Amendment, however, a person must show that the compelled disclosure will subject them to substantial hazards of self-incrimination. *See California v. Byers*, 402 U.S. 424, 429, 91 S. Ct. 1535, 29 L. Ed. 2d 9 (1971). Further, the United States Supreme Court has stated that there is "weighty authority" for the rule that once a person is convicted of a crime, he or she no longer has the privilege against self-incrimination because they can no longer be incriminated by their testimony about that crime. *Reina v. United States*, 364 U.S. 507, 513, 81 S. Ct. 260, 5 L. Ed. 2d 249 (1960). Because the State concedes that "Mr. Ecklund faces no danger of subsequent prosecution for any statements made regarding his crime," it is apparent that Ecklund's right against self-incrimination has not been violated. Supplemental Br. of Resp't at 10.

Our own case law also supports this conclusion. In *State v. King*, 130 Wn.2d 517, 925 P.2d 606 (1996), we held that

---

[5]"The Fifth Amendment protection against self-incrimination is made applicable to the states through the Fourteenth Amendment." *State v. Warner*, 125 Wn.2d 876, 884, 889 P.2d 479 (1995).

[6]The Fifth Amendment and article I, section 9 of Washington's Constitution are given the same interpretation. *See State v. Foster*, 91 Wn.2d 466, 473, 589 P.2d 789 (1979); *State v. Mecca Twin Theater & Film Exch., Inc.*, 82 Wn.2d 87, 91, 507 P.2d 1165 (1973).

the Fifth Amendment privilege against self-incrimination does not apply to minimum term settings because the criminal proceeding has terminated. In *King* we reasoned that:

> King was not exposed to criminal liability in violation of the Fifth Amendment when the Board used his treatment disclosures to support an exceptional minimum term sentence. . . . [T]he State may validly insist on answers to incriminating questions and properly administer its probation system so long as the State recognizes that the answers may not be used in a subsequent criminal proceeding.

*King*, 130 Wn.2d at 529. The Court of Appeals inexplicably failed to mention *King* and relied, instead, on *State v. Garibay*, 67 Wn. App. 773, 841 P.2d 49 (1992), a Court of Appeals' decision. *Garibay* is patently distinguishable from the instant case because it dealt with the appeal of a sentence imposed by a trial court. Here, as we have noted above, we are confronted with the setting of a minimum term by the Board.

## 2. APPLICATION OF THE ABUSE OF DISCRETION STANDARD

█ The Court of Appeals also held that:

> [R]efusing parole based on denial of guilt after an offender has served his maximum standard range is not "reasonably consistent" with SRA standards. Under the SRA, a trial court cannot impose an exceptional sentence based on an offender's exercise of his or her constitutional rights. . . . Similarly, the Board cannot use denial of guilt to show lack of rehabilitation or future dangerousness.

*Ecklund*, 91 Wn. App. at 450-51 (citations omitted). The State contends that this decision was erroneous because by "disregarding [the] nexus between rehabilitation and recognition of guilt, the Court of Appeals has improperly substituted its own judgment for that of the Board." Mot. for Discretionary Review at 16.

The Court of Appeals was correct in observing the Board

is to attempt to make its decisions reasonably consistent with the SRA.[7] That statutory mandate, however, is modified somewhat by RCW 9.95.009(3), which expressly states that "[n]otwithstanding the provisions of subsection (2) of this section, the indeterminate sentence review board *shall give public safety considerations the highest priority* when making all discretionary decisions on the remaining indeterminate population regarding the ability for parole, parole release, and conditions of parole." (Emphasis added.) Moreover, the Legislature has *statutorily precluded* the Board from releasing a prisoner, *prior to the expiration of their maximum term,* "unless in its opinion [the prisoner's] rehabilitation has been complete and he is a fit subject for release." RCW 9.95.100. Furthermore, we have held that "[i]t is self-evident that if the inmate is not parolable or there is not an acceptable plan of parole, *then the minimum term is necessarily extended." In re Personal Restraint of Ayers,* 105 Wn.2d 161, 167, 713 P.2d 88 (1986) (emphasis added).

As we have noted above, the Court of Appeals should have focused on whether the Board abused its discretion in concluding that Ecklund did not establish that he was parolable. Unfortunately, the Court of Appeals' decision failed to acknowledge the high degree of discretion that the Board is endowed with when it makes parole decisions.[8] In regard to the Board's discretion, this court has held that a prisoner, who was sentenced prior to the enactment of the

---

[7]RCW 9.95.009(2), in relevant part, provides: "When making decisions on duration of confinement, including those relating to persons committed under a mandatory life sentence, and parole release under RCW 9.95.100 and 9.95.110, the board shall consider the purposes, standards, and sentencing ranges adopted pursuant to RCW 9.94A.040 and the minimum term recommendations of the sentencing judge and prosecuting attorney, and shall attempt to make decisions reasonably consistent with those ranges, standards, purposes, and recommendations: PROVIDED, That the board and its successor shall give adequate written reasons whenever a minimum term or parole release decision is made which is outside the sentencing ranges adopted pursuant to RCW 9.94A.040. In making such decisions, the board and its successors *shall consider the different charging and disposition practices under the indeterminate sentencing system."* (Emphasis added.)

[8]In *January v. Porter,* 75 Wn.2d 768, 774, 453 P.2d 876 (1969), this court stated: "[T]he courts have long recognized . . . .

SRA, is "subject entirely to the discretion of the Board, *which may parole him now or never." In re Personal Restraint of Powell,* 117 Wn.2d 175, 196, 814 P.2d 635 (1991) (emphasis added). Moreover, this court has held that the "Board may redetermine the minimum term [of a prisoner] at its discretion, for a variety of reasons, any time prior to an inmate's completion of his maximum term." *King,* 130 Wn.2d at 528 n.4; *see also* RCW 9.95.052 (stating that "[a]t any time after the board . . . has determined the minimum term of confinement of any person subject to confinement in a state correctional institution . . . the board may redetermine and refix [a] convicted person's minimum term of confinement").[9]

The Court of Appeals also ignored the principle that "the RCW 9.95.009(2) mandate for duration of confinement decisions 'reasonably consistent' with the SRA does not 'superimpose exactly' the SRA upon the indeterminate system. The rehabilitative aim still applies to the prison population sentenced under the indeterminate system."

". . . that, although releasing a convicted felon on parole may be beneficent and rehabilitative and in the long run produce a genuine social benefit, it is also risky business. The parole may turn loose upon society individuals of the most depraved, sadistic, cruel and ruthless character who may accept parole with no genuine resolve for rehabilitation nor to observe the laws and customs promulgated by the democratic society, which in the process of self-government granted the parole. Thus, recognizing the risky nature of parole as well as its beneficent qualities, *the courts have universally held that the granting or denial of parole . . . rests exclusively within the discretion of the board*; that parole is not a right but a mere privilege conferred as an act of grace by the state through its own administrative agency." (Emphasis added.)

[9]In addition, the United States Supreme Court has stated:

"The parole-release decision . . . is more subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release. . . . The parole determination . . . may be made 'for a variety of reasons and often involve[s] no more than informed predictions as to what would best serve [correctional purposes] or the safety and welfare of the inmate.' The decision turns on a 'discretionary assessment of a multiplicity of imponderables, entailing primarily what a man is and what he may become rather than simply what he has done.' " *Greenholtz v. Inmates of the Neb. Penal & Correctional Complex,* 442 U.S. 1, 9-10, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979) (alterations in original) (citations omitted); *Ayers,* 105 Wn.2d at 165-66.

*Locklear*, 118 Wn.2d at 415. As a result, the Board's "practices and criteria need not mirror the SRA practices and criteria for imposing an exceptional sentence." *Locklear*, 118 Wn.2d at 414. While certainly the Board's discretion is not unbridled, this court has also held that a prisoner's lack of rehabilitation is a sufficient reason to impose an exceptional new minimum term. *See Locklear*, 118 Wn.2d at 412-15; *Addleman v. Board of Prison Terms & Paroles*, 107 Wn.2d 503, 511, 730 P.2d 1327 (1986) (holding that examples of valid reasons for a decision by the Board to not conform with the SRA at parole hearings include "insufficient rehabilitation and improper parole plans"); *see also Gollaher v. United States*, 419 F.2d 520, 530 (9th Cir. 1969) ("It is almost axiomatic that the first step toward rehabilitation of an offender is the offender's recognition that he was at fault.").

In light of the Board's considerable discretion and the fact that we have held that the SRA is not entirely superimposed on the indeterminate system, we cannot say that the Board abused its discretion in holding that Ecklund was not parolable. While we do not believe that it would have been appropriate for the Board to base an exceptional minimum term solely on Ecklund's refusal to admit that he was guilty of the offense which led to his sentence to prison, it is justified in considering his denial of guilt as a fact bearing on the question of whether he had been rehabilitated and presents a threat to community safety. In this regard, we agree with the Ninth Circuit's statement in *Gollaher* that the first step toward rehabilitation is "the offender's recognition that he was at fault." *Gollaher*, 419 F.2d at 530.

Furthermore, Ecklund's failure to confront guilt was not the only basis on which the Board concluded that he was not rehabilitated. It concluded, additionally, that Ecklund has minimized his problems with alcohol and consistently changed his story regarding the events surrounding the murder of Betty Jensen. The record supports those conclusions and we believe they are legitimate factors for the

Board to consider.[10] While the Board may not demand that Ecklund confess to the murder in order to obtain parole, it was reasonable for the Board to require, for the purposes of therapy, that Ecklund come to grips with the fact that he was convicted of murder and acknowledge the possibility that he might have murdered Betty Jensen during an alcoholic blackout, even though he does not remember committing the crime.[11] In short, we believe that the Board did not abuse its discretion in denying Ecklund's parole on the basis of its conclusion that he was not rehabilitated and that he posed a threat to community safety.[12]

## CONCLUSION

We hold that the Court of Appeals erred in concluding that the Board's consideration of Ecklund's denial of guilt violated his constitutional right against self-incrimination. Furthermore, the Board did not abuse its discretion when it determined that Ecklund was not rehabilitated and was a threat to community safety. Accordingly, we reverse the

---

[10]The Board's consideration and articulation of these factors belie the dissent's assertion that the Board failed to set forth adequate written reasons when it extended Ecklund's minimum term.

[11]Significantly, Dr. Helmut Riedel, a state psychiatrist who examined Ecklund, explored with Ecklund the possibility that he "could have killed [Betty Jensen] while in an alcoholic blackout [and], thus, simply not remember[ed] his involvement in the crime." Mot. for Discretionary Review, Attach. 11, at 4. Dr. Riedel stated, however, that "Mr. Ecklund strongly denied this possibility and said that he knew he did not commit the murder." Mot. for Discretionary Review, Attach. 11, at 4.

[12]The dissent states that the abuse of discretion standard is inapplicable because the Board's decision "violate[d] the law." Dissenting op. at 180. This contention lacks merit because, as noted above, the Board's decision complied with all relevant statutory law and is well supported by our case law. Furthermore, the case cited by the dissent to support its contention, In re Personal Restraint of Cashaw, 123 Wn.2d 138, 866 P.2d 8 (1994), is distinguishable because it dealt with PRPs where the petitioner had "challeng[ed] the Board's failure to follow its own procedures." Cashaw, 123 Wn.2d at 148. In Cashaw, for example, the Board failed to give the petitioner "notice or an in-person hearing prior to setting his minimum term." Cashaw, 123 Wn.2d at 142. Accordingly, Cashaw is simply inapplicable to Ecklund's case and the relevant case law from this court clearly mandates that the appropriate standard of review is an "abuse of discretion." See Locklear, 118 Wn.2d at 418; Whitesel, 111 Wn.2d at 628; Myers, 105 Wn.2d at 264.

Court of Appeals and affirm the Board's setting of a new minimum term for Ecklund.

GUY, C.J., and SMITH, JOHNSON, TALMADGE, and IRELAND, JJ., concur.

MADSEN, J., concurs in the result.

SANDERS, J. (dissenting) — The majority reverses the Court of Appeals on the Fifth Amendment issue, the only issue raised by the state in its Motion for Discretionary Review.[13] However the Court of Appeals' opinion in this case was decided on at least two independent grounds: (1) consideration of Ecklund's refusal to admit guilt violated his Fifth Amendment rights, *In re the Personal Restraint of Ecklund*, 91 Wn. App. 440, 450-51, 957 P.2d 1290 (1998), and (2) the decision of the Indeterminate Sentence Review Board (ISRB) violated the governing statute. *Id.* at 451 ("Ecklund's denial of guilt is not sufficiently compelling or rare so as to justify deviation from the standard range sentences for homicide set by the Legislature.").

A. No review of issues that are not designated in the Motion for Reconsideration

Even if the majority is correct that Ecklund's Fifth Amendment rights were not violated, the Court of Appeals must be affirmed on the independent statutory grounds set forth in its opinion.

Independent grounds set forth in a Court of Appeals'

---

[13]The issue presented for review by the state is:

Did the Court of Appeals commit error when it held that, *under the Fifth Amendment*, the Board is prohibited from considering an offender's refusal to acknowledge guilt when (1) the privilege against self-incrimination does not apply to criminal behavior that the offender has already been convicted of; (2) the Board's assessment of an offender's parolability is not part of the "criminal case" to which the Fifth Amendment applies, and (3) an offender's refusal to confront his criminal behavior is important to the Board's assessment of his level of rehabilitation?

Mot. for Discretionary Review 1-2 (emphasis added).

opinion are not subject to our review unless they are raised in the petitioner's Motion for Discretionary Review. RAP 13.7(b) is mandatory:

[i]f the Supreme Court accepts review of a Court of Appeals decision, the Supreme Court will review only the questions raised in the motion for discretionary review . . . .

RAP 13.7(b). *See also Shumway v. Payne*, 136 Wn.2d 383, 392-93, 964 P.2d 349 (1998); *Estate of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 496, 844 P.2d 403 (1993) ("Because Hartford [respondent] failed to assign error to the Court of Appeals ruling that Jordan [petitioner] has standing, we will not review that aspect of the court's decision."); *Clam Shacks of Am., Inc. v. Skagit County*, 109 Wn.2d 91, 98, 743 P.2d 265 (1987) ("The petition for review does not challenge this holding [of the Court of Appeals] so we need not rule upon it.").

Here the Court of Appeals based its holding not only on constitutional grounds but independent statutory considerations. It observed while the ISRB's primary reason for denial of parole in this case is Ecklund's refusal to admit guilt for the crime for which he is serving his sentence, there was no evidence in the record linking such a refusal to lack of rehabilitation, therefore concluding the ISRB violated RCW 9.95.009(2) by failing to provide adequate reasons for its decision as statutorily mandated. The Court of Appeals further held the ISRB committed a second statutory transgression because use of denial of guilt is not a statutorily authorized aggravating factor under RCW 9.94A.390.

The Motion for Discretionary Review does not challenge either of these independent statutory grounds upon which the Court of Appeals also rested its decision. Accordingly RAP 13.7(b) precludes our review of these statutory issues because they were not properly preserved for our review.

B. ISRB has no discretion to violate statute

Even if these independent statutory grounds had been

properly challenged, the Court of Appeals' decision still should be affirmed on the merits. A decision of the ISRB in a case such as this, where the decision violates the law, is outside the ISRB's discretion and is not entitled to deference. Therefore the abuse of discretion standard of review utilized by the majority is simply inapplicable.

To succeed in a personal restraint petition (PRP) a petitioner must demonstrate he is under restraint, RAP 16.4(b), and that the restraint is unlawful for at least one of the reasons enumerated in RAP 16.4(c). One circumstance rendering restraint unlawful is an order in a criminal proceeding "entered in violation of the . . . laws of the State of Washington." RAP 16.4(c)(2). When restraint is unlawful because it violates Washington's statutory law the error is a legal one to which the abuse of discretion standard of review is inapplicable.[14] *In re Personal Restraint of Shepard*, 127 Wn.2d 185, 191-92, 898 P.2d 828 (1995) ("Petitioner need not prove an abuse of discretion once he shows the [Indeterminate Sentence Review] Board failed to follow its regulations."); *In re Personal Restraint of Cashaw*, 123 Wn.2d 138, 149, 866 P.2d 8 (1994) ("[W]e evaluate Cashaw's PRP by examining *only* the requirements of RAP 16.4. . . . [Cashaw's] restraint was unlawful because it was accomplished in violation of the Board's regulations. *See* RAP 16.4(c)(2), (6).") (footnote omitted).[15] However deferential the abuse of discretion standard, it does not

---

[14]Abuse of discretion differs from the standard of review ordinarily applied to personal restraint petitions (PRPs), which requires "actual and substantial prejudice" in the case of constitutional error and "a fundamental defect which inherently results in a complete miscarriage of justice" in the case of nonconstitutional error. *In re Personal Restraint of Cook*, 114 Wn.2d 802, 810, 812, 792 P.2d 506 (1990). We have held such onerous standards of review are inapplicable to PRPs which challenge decisions, such as denial of parole or the setting of a minimum term, from which there has been *no previous opportunity for judicial review. In re Personal Restraint of Cashaw*, 123 Wn.2d 138, 148-49, 866 P.2d 8 (1994).

[15]The majority attempts to distinguish *Cashaw* on the basis that the challenge in *Cashaw* concerned the ISRB's failure to follow its own regulations rather than a failure to follow a statutory mandate as in the present case. Majority at 177 n.12. However in *Cashaw* we specifically stated,

The Board's administrative regulations qualify as "laws of the State of Washington" as that term is used in RAP 16.4(c)(2), (6). General references to

excuse actions of the ISRB outside its legislatively delegated sphere of discretion.

## C. ISRB must give adequate written reasons when imposing exceptional sentence

When setting minimum terms and determining parole, the ISRB must make decisions which are "reasonably consistent" with the "ranges, standards, purposes, and recommendations" of the Sentencing Reform Act of 1981 (SRA). RCW 9.95.009(2); RCW 9.95.013; *see also Addleman v. Board of Prison Terms & Paroles*, 107 Wn.2d 503, 511, 730 P.2d 1327 (1986) (offenders convicted and sentenced before the SRA became effective are entitled to have their terms reviewed and redetermined pursuant to SRA purposes, standards, and ranges). Although the ISRB is not bound to mirror SRA criteria in its decisions, but only to be "reasonably consistent" with it, *In re Personal Restraint of Locklear*, 118 Wn.2d 409, 414, 823 P.2d 1078 (1992), the legislature has nevertheless provided:

> [T]he board and its successors *shall* give *adequate written reasons* whenever a minimum term or parole release decision is made which is outside the sentencing ranges adopted pursuant to RCW 9.94A.040 [the SRA].

RCW 9.95.009(2) (emphasis added). The statute therefore imposes a mandatory duty upon the ISRB not simply to provide written reasons for its decision, but for those reasons to be *adequate*. Minimum adequate reasons must also be supported by facts in the record on appeal. *Locklear*, 118 Wn.2d at 417 ("[T]he [ISRB's] reasons for an exceptional sentence must be apparent from the record and not chosen 'out of thin air' ") (quoting *In re Personal Restraint of Robles*, 63 Wn. App. 208, 218, 817 P.2d 419 (1991)).

---

"laws of this State" or "laws of the State of Washington" not only include within their scope Washington's statutes, but generally also reach administrative regulations.

*Cashaw*, 123 Wn.2d at 149-50 n.6. It is therefore clear that *Cashaw* is based upon the fact that the ISRB's regulations constitute part of the state law which prescribes the sphere of discretion of the ISRB. The majority's inference that the ISRB's discretion is limited by regulation but not by statute is not only illogical but also blatantly erroneous.

Here the ISRB added 60 months to Ecklund's minimum term, bringing his total minimum term to 360 months.[16] Ecklund's minimum term is therefore 40 months in excess of the top of the relevant SRA sentencing range of 240 to 320 months. RCW 9.94A.310. This is an exceptional sentence[17] for which the ISRB must provide adequate written reasons. RCW 9.95.009(2).

The ISRB characterized its primary reason for denying Ecklund parole as "he [Ecklund] continues to deny his involvement in the crime; however, all of the evidence is in the contrary." Mot. for Discretionary Review, Attach. 3, at 2 (ISRB Decision & Reasons (Oct. 8, 1996, amended Nov. 7, 1997)). However, even if true, the ISRB does not articulate a rationale to justify denial of parole based simply upon a continued assertion of innocence. Indeed the ISRB's decision focuses almost exclusively on the details of the crime and Ecklund's refusal to admit guilt, concluding it has "concern regarding his [Ecklund's] denial as to what kind of risk he would present in returning to the community." *Id.* at 3. However the ISRB can point to nothing in the record showing that Ecklund's refusal to admit guilt is linked to a higher risk of reoffending. To the contrary, the psychological evaluation of Ecklund states,

> [Ecklund] lacks many of the risk factors that otherwise would indicate a high risk for reoffending: no juvenile delinquency, no prior acts of physical violence documented, no prior adult offenses other than traffic violations, and no major infractions during incarceration involving fighting or assaultiveness. He has in fact maintained a major infraction-free record during his incarceration since 1985, has programmed adequately, and has involved himself in a number of constructive activities. Thus, given all the years he has served, *one wonders whether it now would make much difference in terms of his risk of reoffending whether or not he admits to having committed the instant offense.*

---

[16]The 360-month minimum term is calculated by adding Ecklund's original 276-month minimum term, the 24 months added in 1995, and the 60 months added in 1996.

[17]The majority agrees that Ecklund's sentence is exceptional. Majority at 169.

Mot. for Discretionary Review, Attach. 11, at 4-5 (emphasis added) (Psychological Evaluation by Helmut Riedel, Ph.D. (May 13, 1996)). The ISRB explicitly acknowledges Ecklund has done everything he can, short of confessing, to comply with the ISRB's requirements, stating Ecklund has "complied with those expectations [set out by the parole board in 1995] with the exception of Victim Awareness, which is not offered at this facility." Mot. for Discretionary Review, Attach. 3, at 2 (ISRB Decision & Reasons). Not only does the record before this court fail to demonstrate any connection between Ecklund's refusal to admit guilt and an increased risk of reoffending but it seems to affirmatively negate the unsupported inference as well. Absent such a connection, the ISRB's decision to deny parole and impose an exceptional sentence based primarily on Ecklund's refusal to admit guilt lacks an adequate statement of reasons mandated by RCW 9.95.009(2).

The majority demonstrates its agreement on this point when it states,

> [W]e do not believe that it would have been appropriate for the [Indeterminate Sentence Review] Board to base an exceptional minimum term solely on Ecklund's refusal to admit that he was guilty of the offense which led to his sentence. . . .

Majority at 176. However the relief granted by the Court of Appeals was remand to the ISRB with instructions to reconsider its decision "without regard to [Ecklund's] claim of innocence and denial of guilt." *Ecklund*, 91 Wn. App. at 454. By rejecting the terms of the remand which would disallow this narrow factor, the majority mistakenly permits the ISRB to assume refusal to admit guilt is tantamount to lack of rehabilitation absent an articulated basis in the record. Majority at 176 ("[The ISRB] is justified in considering [Ecklund's] denial of guilt as a fact bearing on the question of whether he had been rehabilitated and presents a threat to community safety."). Such an assumption and such deference to the ISRB is inconsistent with the statutory mandate that "adequate written reasons" must be

provided before an exceptional sentence is imposed. RCW 9.95.009(2).

The majority relies on RCW 9.95.009(3), which gives priority to "public safety considerations" to justify the ISRB's decision.[18] However precedent holds simple assertion by the ISRB that public safety is at issue, as in the present case, is insufficient to comply with the statute. *Locklear*, 118 Wn.2d at 418 (seeking to ensure "there will be a record sufficient to permit meaningful and efficient appellate oversight of ISRB minimum term decisions"). If merely raising the specter of danger to public safety were enough to immunize an ISRB decision from reversal, then judicial review would amount to little more than a rubber stamp.

### D. Maintaining innocence is not a statutory basis to enhance punishment

Furthermore the decision of the ISRB does not accord with RCW 9.94A.390(2) which defines these aggravating circumstances in which an exceptional sentence may be imposed. Refusal to admit guilt is *not* specified as an aggravator, and no aggravator listed is applicable in this case. Although the list of circumstances in RCW 9.94A.390(2) is not exclusive and is described as "illustrative only," it nevertheless provides statutory guidance. Ordinary lack of remorse and/or denial of guilt is not sufficient to aggravate a crime. *State v. Garibay*, 67 Wn. App. 773, 781-82, 841 P.2d 49 (1992) ("The mundane lack of remorse found in run-of-the-mill criminals is not sufficient to aggravate an offense; the lack of remorse must be aggravated or egregious. . . . Trial courts may not use a defendant's silence or continued denial of guilt as a basis for justifying an exceptional sentence."). In this case although Ecklund as-

---

[18]RCW 9.95.009(3) states,

Notwithstanding the provisions of subsection (2) of this section, the indeterminate sentence review board shall give public safety considerations the highest priority when making all discretionary decisions on the remaining indeterminate population regarding the ability for parole, parole release, and conditions of parole.

serts his innocence, there is nothing unusual or egregious about this which would justify an exceptional sentence. The ISRB is required by RCW 9.95.013 to make decisions "reasonably consistent" with the SRA. Here the ISRB's use of refusal-to-admit-guilt as the sole aggravator justifying imposition of an exceptional sentence is not "reasonably consistent" with the SRA as required by RCW 9.95-.013.

The majority further relies on *In re Personal Restraint of Locklear*, 118 Wn.2d 409, 823 P.2d 1078 (1992), for the proposition that a prisoner's lack of rehabilitation may justify imposition of an exceptional new minimum term. While *Locklear* certainly supports that legal proposition where lack of rehabilitation can be demonstrated, the facts of *Locklear* differ significantly from those before us. In *Locklear* the petitioner's parole had been revoked twice before the ISRB extended his minimum term to an exceptional sentence. While a record demonstrating two instances when parole was revoked clearly provides some basis for a finding of lack of rehabilitation, Ecklund's case is clearly distinguishable, for there is no such clear indication in the record before us that Ecklund has not been rehabilitated.

Because the ISRB has not provided adequate reasons for its decision as required be RCW 9.95.009(2) and because there are no aggravating circumstances under RCW 9.94A-.390 justifying imposition of an exceptional sentence, the decision of the ISRB violates statutory law.

The Court of Appeals must be affirmed because the independent statutory grounds for the decision were not properly raised on review and the Court of Appeals correctly decided them in any event.